On Return to Remand
We originally remanded this cause to the trial court with directions that that court conduct an evidentiary hearing addressing Jimmy Lee Dill's claims of ineffective assistance of counsel, raised in his Rule 32, Ala.R.Crim.P., petition. Dill v. State, 717 So.2d 826 (Ala.Cr.App. 1995). Dill and the state both argued, and we agreed, that Dill's claims of ineffective assistance of counsel were alleged with sufficient specificity to merit a hearing in the trial court. We ordered the trial court to conduct an evidentiary hearing concerning these claims and to file a written order of its findings with regard to Dill's claims.
The trial court has filed an order with this court on return to remand. On September 13, 1996, the trial court held an evidentiary hearing on the allegations of ineffective assistance of counsel made in Dill's petition; on October 9, 1996, in a written order, the trial court denied all relief. Judge Michael McCormick, the circuit judge who presided over Dill's trial, also presided over the evidentiary hearing on the Rule 32 petition. Dill's attorneys at trial were J. Louis Wilkinson and Virginia Vinson. He was represented by different counsel on appeal. No witnesses were called at the evidentiary hearing. It appears from the trial court's order and from the transcript of the hearing that, at the hearing, Dill abandoned most of the claims in his petition.
The essential facts of this case were recited by this court in this court's opinion on direct appeal, see Dill v. State,600 So.2d 343 (Ala.Cr.App. 1991), aff'd, 600 So.2d 372 (Ala. 1992), cert. denied, 507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684
(1993). Those facts are as follows:
 "The record reveals that the victim, Leon Shaw, drove to Terry Dill's house on the afternoon of February 8, 1989. Shaw was not supposed to be driving because he was serving time at the Federal Work Release Center for a drug violation. Shaw was, however, allowed to leave the center to go to work. He operated the Rose Boutique, which he owned with his wife, Junatha Shaw. Terry Dill left the house and got in the car with Shaw. The appellant was in the front seat with Shaw. Shaw told Terry Dill that the appellant wanted to buy drugs from Shaw.
 "The testimony reveals that Terry Dill was a former cocaine addict who had sold cocaine with Shaw for four years. Shaw would pay Terry Dill to bring him customers. *Page 368 
 "Shaw, Dill, and the appellant ran into Jacqueline Ball and Freddie Carter near a church on 85th Street. Shaw was still driving the car and Terry Dill was sitting in the backseat behind him. The appellant was still in the front passenger seat. Apparently, Shaw and the appellant got out of the car. Shaw talked to Jacqueline Ball, and the appellant talked to Freddie Carter. Shaw was carrying a black pouch in which he normally kept cocaine and money. Shaw had at least $200 in his hand.
 "After Ball and Carter left, the appellant asked Shaw if he would give him some cocaine until he could get the money to pay for it. Shaw refused. They left for Druid Hills, where the work release center was located, because Shaw had to sign in at the center. When they got to Druid Hills, Shaw's beeper went off. They all got out of the car and Shaw made a telephone call. They went to the Curb Market and Shaw bought wine coolers. Shaw had a `folded wad of money.' (R. 481.) When they left the store, Shaw had everyone in the car switch places so that the people at the center would not see him driving. Terry Dill was now driving and the appellant was in the backseat. Terry Dill drove to the center.
 "The appellant again asked Shaw for cocaine. Shaw told him that he would give him the cocaine when the appellant got some money. He also showed the appellant a half ounce of cocaine. The appellant asked for cocaine again when they pulled up to the center. Shaw went to the building. He pulled a `big wad of money' out of his pocket. (R. 395.) There was so much money that it could not be rolled up. He told the case manager at the center that he had just left the Rose Boutique and was going to make a deposit.
 "While Shaw was inside the center, the appellant said to Terry Dill, `You don't believe I'll rob him or shoot him.' (R. 490.) The appellant continued to talk about killing Shaw. When Shaw got back in the car, the appellant said that he would shoot Shaw if he did not give him some cocaine. After they drove off, there was a gunshot. Blood spurted onto Terry Dill. The appellant had a small automatic pistol, approximately .25 or .22 caliber. The appellant told Terry Dill to be quiet and keep driving. The appellant pulled the trigger as if he was going to shoot Shaw again. They eventually stopped in an alley. The appellant searched Shaw and took the money and cocaine. The appellant then got a rag and started wiping fingerprints off of the car. Terry Dill ran away. The appellant also ran away. Terry Dill called his girlfriend to pick him up. He went home later that evening.
 "Shaw was taken to the hospital where emergency brain surgery was performed. The bullet entered the left, back side of his brain. Shaw was unconscious. He had abnormal movement in his extremities which indicates that the brain is functioning extremely abnormally. Both a feeding tube and breathing tube were inserted. He was discharged from the hospital on April 26, 1988, because there was nothing more the hospital could do for him. Shaw could not function independently and required round-the-clock care. Shaw eventually pulled the feeding tube out. However, his doctor said he would not replace the tube since he could eat and drink by mouth. Shaw was readmitted to the hospital on October 31, 1989. He never regained consciousness and died on November 22, 1989. Shaw's doctors testified that he died of complications from a gunshot wound to the head.
 "Forensic evidence revealed that the bullet removed from Shaw's head was consistent with a .22 caliber projectile. The characteristics of the wound were consistent with a contact gunshot wound.
 "The appellant gave a statement to the police on February 18, 1988. He *Page 369 
stated that he and Terry Dill were with Shaw and that they drove to North Birmingham. Terry Dill was driving the car, Shaw was on the front passenger seat, and the appellant was in the backseat behind Terry Dill. The appellant stated that Shaw's door opened and that he heard a shot from behind Shaw. The appellant was then asked how Shaw was shot from behind without the window being shot out of the car. The appellant then stated that Shaw was actually getting into the car when someone ran up to Shaw's door. The appellant stated that he heard a gunshot. He and Terry Dill got out and ran. The appellant then stated that after hearing the shot, they drove off and a car followed them. They drove to an alley, jumped out of the car, and ran away. The appellant stated that Shaw had some cocaine in a black bag but he did not see any money."
600 So.2d at 350-51.
Initially, we note that all issues cognizable on direct appeal have been scrutinized, and that the record was reviewed under the "plain error" doctrine.
 I.
In his petition, Dill presents numerous claims regarding the performance of his trial counsel. He contends that as a result of his trial counsel's alleged errors, he was denied the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution.
 "In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
 "`First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.' "466 U.S. at 687, 104 S.Ct. at 2064.
 "`The performance component outlined in Strickland is an objective one: that is, whether counsel's assistance, judged under "prevailing professional norms," was "reasonable considering all the circumstances."' Daniels v. State, 650 So.2d 544, 552 (Ala.Cr.App. 1994), cert. denied, 488 U.S. 1051, 109 S.Ct. 884, 102 L.Ed.2d 1007 (1995), quoting Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. `A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.
 "The claimant alleging ineffective assistance of counsel has the burden of showing that counsel's assistance was ineffective. Ex parte Baldwin, 456 So.2d 129 (Ala. 1984), aff'd, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). `Once a petitioner has identified the specific acts or omissions that he alleges were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall "outside the wide range of professionally competent assistance." [Strickland,] 466 U.S. at 690, 104 S.Ct. at 2066.' Daniels, 650 So.2d at 552. When reviewing a claim of ineffective assistance of counsel, this court indulges a strong presumption that counsel's conduct was appropriate and reasonable. Hallford v. State, 629 So.2d 6 (Ala.Cr.App. 1992), cert. denied, *Page 370 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491
(1994); Luke v. State, 484 So.2d 531 (Ala.Cr.App. 1985). `This court must avoid using "hindsight" to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance.' Hallford, 629 So.2d at 9. See also, e.g., Cartwright v. State, 645 So.2d 326
(Ala.Cr.App. 1994).
 "`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'
 "Strickland, 466 U.S. at 689, 104 S.Ct. at 2065
(citations omitted). See Ex parte Lawley, 512 So.2d 1370, 1372 (Ala. 1987).
 "`Even if an attorney's performance is determined to be deficient, the petitioner is not entitled to relief unless he establishes that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Strickland,] 466 U.S. at 694, 104 S.Ct. at 2068.'
"Daniels, 650 So.2d at 552.
 "`When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'
 "Strickland, 466 U.S. at 697, 104 S.Ct. at 2069, quoted in Thompson v. State, 615 So.2d 129, 132 (Ala.Cr.App. 1992), cert. denied, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 418 (1993).
 "In a Rule 32 proceeding, the petitioner has `the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.' Rule 32.3, Ala.R.Crim.P. See Fortenberry v. State, 659 So.2d 194 (Ala.Cr.App. 1994), cert. denied, 516 U.S. 846, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995); Wilson v. State, 644 So.2d 1326 (Ala.Cr.App. 1994); Elliott v. State, 601 So.2d 1118 (Ala.Cr.App. 1992)."
Bui v. State, 717 So.2d 6, 12-13 (Ala.Cr.App. 1997).
Moreover, "[a] finding of no plain error is one factor to consider when assessing the performance of counsel." Fortenberry v. State, 659 So.2d 194, 200 (Ala.Cr.App. 1994), cert. denied,516 U.S. 846, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995), quoting Hallford v. State, 629 So.2d 6, 10 (Ala.Cr.App. 1992), cert. denied,511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994).
Dill raises the following issues for our review. *Page 371 
 A.
Dill initially contends that his trial counsel rendered ineffective assistance during the sentencing phase of his trial because, he says, his counsel failed to investigate mitigating evidence, and, therefore, failed to present any mitigating evidence. Specifically, he maintains that members of his family and his friends could have provided testimony about his background that would have been useful as mitigation. At Dill's trial the only evidence presented by the defense during the sentencing phase was Dill's testimony in his own behalf.
While counsel has a duty to attempt to locate evidence favorable to the defendant, "this duty only requires a reasonable investigation." Singleton v. Thigpen, 847 F.2d 668, 669 (11th Cir. 1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 822,102 L.Ed.2d 812 (1989) (emphasis added). See Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066,80 L.Ed.2d 674 (1984); Morrison v. State, 551 So.2d 435 (Ala.Cr.App. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301
(1990). Counsel's obligation is to conduct a "substantial investigation into each of the plausible lines of defense." Strickland, 466 U.S. at 681, 104 S.Ct. at 2061 (emphasis added). "A substantial investigation is just what the term implies; it does not demand that counsel discover every shred of evidence but that a reasonable inquiry into all plausible defenses be made." Id., 466 U.S. at 686, 104 S.Ct. at 2063. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." Id.,466 U.S. at 691, 104 S.Ct. at 2066.
At the evidentiary hearing, Dill's Rule 32 counsel introduced as evidence in support of this claim affidavits from Dill's brothers, Archie, Leonard, and Lee Henry; from Carolyn Dill, Dill's sister-in-law; from Angela Whaley, the mother of Dill's child; and from Abbie Dill, Dill's aunt. These individuals indicated in their affidavits that they would have testified on Dill's behalf during the sentencing phase of his trial if they had been called as witnesses. In the affidavits, the witnesses testified about Dill's family life and history and about the kind of person Dill was before he began using drugs.
There is nothing in the record to suggest that Dill's trial counsel ignored matters that should reasonably have alerted him to the value of contacting persons who might have information about Dill's background that might be presented as mitigation evidence. See Cochran v. State, 548 So.2d 1062 (Ala.Cr.App.), cert. denied, 493 U.S. 900, 110 S.Ct. 259, 107 L.Ed.2d 208
(1989). There is nothing in the record to indicate that Dill's counsel was aware, or should have been aware, that such persons were willing to testify on Dill's behalf at Dill's sentencing hearing. Thus, we find that Dill has not shown that his trial counsel failed to conduct a reasonable investigation to locate witnesses who could have presented mitigating evidence on his behalf. Dill has not proven by a preponderance of the evidence that his attorneys were ineffective because they failed to investigate and present possible mitigating evidence. Fortenberry, 659 So.2d at 200.
Moreover, even if Dill's trial counsel had been aware of these possible witnesses, none of the testimony presented in their affidavits indicated the existence of any mitigating circumstances recognized by § 13A-5-51, Ala. Code 1975. With reference to the alleged value of the testimony of these potential witnesses, the trial judge who heard Dill's Rule 32 claims, who, as stated earlier, also presided over Dill's trial, found as follows:
 "The Court having considered the affidavits of possible witnesses at the defendant's sentencing hearing, the Court finds that all but one of these witnesses *Page 372 
are family members of the defendant who would have testified that defendant was a good person until he began to use drugs. This Court finds that defense counsel would not be deficient for [not] calling such witnesses and that if considered deficient would not have prejudiced the defendant."
(C. 30.)
We have reviewed the affidavits. We agree with the trial court that the testimony of these potential witnesses would not have changed the balance of mitigating and aggravating circumstances in Dill's case. "In a challenge to the imposition of a death sentence, the prejudice prong of the Strickland inquiry focuses on whether `the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'" Stevens v. Zant, 968 F.2d 1076, 1081 (11th Cir. 1992), cert. denied, 507 U.S. 929, 113 S.Ct. 1306,122 L.Ed.2d 695 (1993), quoted in Daniels v. State, 650 So.2d 544, 568
(Ala.Cr.App. 1994). Dill has not established the reasonable probability that, but for counsel's failure to call these witnesses during the sentencing phase of his trial, the outcome of the sentencing proceeding would have been different. In light of the evidence presented by the state at trial, we find that the actions of counsel, in presenting mitigating evidence from only Dill, were reasonable under the circumstances. Patrick v. State,680 So.2d 959, 962 (Ala.Cr.App. 1996) (holding that trial counsel is not required to investigate every "will-o'-the-wisp or rabbit trail matters of mitigation or defense"). See Waters v. Thomas,46 F.3d 1506, 1511 (11th Cir. 1995) ("our decisions teach that whether counsel's performance is constitutionally deficient depends upon the totality of the circumstances viewed through a lens shaped by the rules and presumptions set down in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984), and its progeny"); and Singleton, supra (no showing of prejudice resulting from inadequate investigation by trial counsel where habeas petitioner failed to proffer the type of mitigating evidence that would have changed outcome of trial had trial counsel conducted further investigation). Because Dill has not shown that any additional evidence would have changed the trial court's decision at sentencing, we agree with the trial court's ruling that trial counsel did not render ineffective assistance with regard to the investigation and presentation of mitigating evidence during the sentencing phase of Dill's trial. Davis v. State, 720 So.2d 1006 (Ala.Cr.App. 1998).
 B.
Dill contends that his trial counsel rendered ineffective assistance because counsel failed to present evidence supporting an intervening cause of death. Specifically, Dill maintains that testimony from Dr. Alwyn A. Shugerman, the physician who treated the victim just before his death, would establish that the victim did not die as a result of a gunshot wound, but as the result of dehydration. In support of his argument, Dill admitted into evidence an affidavit from Dr. Shugerman, in which Dr. Shugerman states that Shaw's immediate cause of death was "severe metabolic derangement and multiple organ failure associated with severe dehydration." (C. 23.)
Dill raised the substantive grounds of this claim for relief on direct appeal. This court, however, rejected this claim, holding:
 "The appellant contends that there is insufficient evidence to sustain the verdict because Leon Shaw's death was caused by his pulling out his feeding tube and dehydration rather than a gunshot wound. We disagree. The record reveals that two physicians testified that the victim died as a result of complications from a gunshot wound. There was testimony that the victim was admitted to the hospital with an injury that was `generally not survivable.' (R. 305.) *Page 373 
 "`A person is criminally liable if the result would not have occurred but for his conduct, operating alone or concurrently, with another cause, unless the concurrent cause was sufficient to produce the result and the conduct of the actor clearly insufficient.' Ala. Code 1975 § 13A-2-5(a).
 "`Where as here, the wound inflicted by defendant upon the victim is dangerous to life, the fact that there are other contributing causes of death does not prevent such a wound from being the legal cause of death. It does not have to be the sole cause. This is true whether (1) the other causes preceded, (2) the other cause is synchronous with, or (3) the other cause follows, commission of the felonious act charged.' (citations omitted.)
 "Smith v. State, 354 So.2d 1167, 1170 (Ala.Cr.App. 1977), cert. denied, 354 So.2d 1172 (Ala. 1978). We see no reasonable basis for a conclusion that the death was not caused by the gunshot wound. The evidence clearly supports the verdict."
Dill, 600 So.2d at 359 (emphasis added).
Because this court rejected the substantive argument underlying Dill's claim, Dill has failed to support his claim that trial counsel was ineffective for not presenting the testimony of Dr. Shugerman at trial. Moreover, the trial court found as follows with regard to this claim:
 "Dr. Shugerman was one of the physicians who treated the victim. Although he was not called as a witness, all of his records of treatment were admitted through Dr. Langford, who also treated the victim. (State's Exhibit No. 4.)
 "It is clear from the evidence and testimony of Dr. Brissie and Dr. Langford that the cause of death was a gunshot to the head.
 "Dr. Shugerman's testimony would not have changed or altered that conclusion.
 "Defense counsel was not deficient in his performance by not calling Dr. Shugerman nor did his failure to call him prejudice the defendant."
(C. 30.)
We have reviewed the record of Dill's direct appeal; we agree with the trial court that Dr. Shugerman's testimony would, at best, be cumulative of other evidence already admitted. The testimony that Dill says Dr. Shugerman would give substantially mirrors the testimony presented at trial by Dr. Langford and Dr. Brissie. Therefore, Dill has failed to establish that he was prejudiced by counsel's failure to call Dr. Shugerman and that there was a reasonable probability that, but for this failure to elicit testimony from Dr. Shugerman about the intervening cause of death, the outcome of his trial could have been different.
Finally, in light of the evidence as presented at trial, Dill's trial counsel may well have made a strategic decision not to focus on the immediate cause of the victim's death. A review of the totality of the circumstances surrounding the victim's death indicates that because of the shotgun wound, the victim's quality of life gradually diminished to the point that the victim, who had a wife and children, was no longer a productive member of society. Counsel may have believed this testimony would have generated more sympathy for the victim. "Strategic choices made after thorough investigation of relevant law and facts are virtually unchallengeable." Ex parte Lawley, 512 So.2d 1370,1372 (Ala. 1987). We will refrain from using hindsight to evaluate trial counsel's decisions. See Hallford, 629 So.2d at 9; and State v. Tarver, 629 So.2d 14, 21 (Ala.Cr.App. 1993). See also Cade v. State, 629 So.2d 38, 42 (Ala.Cr.App. 1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 221 (1994) (holding that "an attorney may reasonably decide to avoid presenting evidence [or a defense] that he believes will do more harm than good"). Considering the evidence in its entirety, we cannot say *Page 374 
that the failure of Dill's counsel to call Dr. Shugerman as a witness at trial was unreasonable. Nor can we say that there is a reasonable probability that, but for counsel's actions, the results of the proceedings would have been different. We agree with the trial court's ruling that Dill's counsel did not render ineffective assistance in this regard.
 C.
Dill contends that his trial counsel rendered ineffective assistance by failing, he says, to "follow through" on the trial court's order for Dill to undergo a psychiatric evaluation. Dill, however, has failed to establish that, but for his counsel's alleged error in this regard, the result of his trial would have been different.
On direct appeal we addressed the underlying substantive issue of Dill's competency to stand trial. We stated, "Our review of the record reveals no evidence whatsoever that would raise a bona fide and reasonable doubt that the appellant was not competent to stand trial." Dill, 600 So.2d at 343. Therefore, we cannot say that Dill's counsel was ineffective for not raising a nonmeritorious claim.
Additionally, the trial court, after the evidentiary hearing, made the following finding:
 "The Court finds that there was no reasonable ground to believe that defendant suffered from any mental disease or defect, or any emotional problems at the time of the offense or at any time in his life.
 "Therefore, defense counsel was not deficient in [not] following up on a psychiatric examination."
(C. 30.)
Dill's Rule 32 counsel offered no new evidence with regard to Dill's competency to stand trial. We believe that the trial court's findings with regard to Dill's mental health are supported by the record. Therefore, Dill has failed to establish that there is a reasonable probability that, but for counsel's actions, the results of his trial would have been different.
Moreover, Dill's defense at trial was based on misidentification. Dill admitted that he was present at the murder, but maintained that someone else actually killed Shaw. Therefore, Dill's mental health was not a central issue at trial. Because Dill failed to establish that his counsel's performance in this regard influenced the outcome of his trial, Dill is not entitled to relief.
Accordingly, we agree with the trial court's ruling that Dill's trial counsel did not render ineffective assistance in this regard.
 D.
Dill sets forth the following claims as instances of his trial counsel's alleged failure to provide effective assistance during the guilt and sentencing phases of his trial:
 1. His counsel allegedly failed to adequately investigate an available defense during the guilt phase of his trial.
 2. His counsel allegedly failed to interview or to call as witnesses persons who could impeach the testimony of Terry Dill, Abbie Dill, and the victim's wife.
 3. His counsel allegedly failed to determine if Shaw had cash in his possession at the time was shot.
 4. His counsel allegedly failed to listen to Dill's tape-recorded statement to the police.
 5. His counsel allegedly failed to investigate his emotional and mental health and his use of drugs at the time of the killing.
 6. His counsel allegedly failed to conduct an adequate voir dire and jury selection, in that counsel:
 a. failed to ask prospective jurors if any of them was unalterably in favor of the death penalty;
 b. failed to strike those prospective jurors who expressed potential bias against Dill; and *Page 375 
 c. failed to object when the prosecutor struck prospective jurors on the basis of their economic status.
 7. His counsel failed to object to the following alleged instances of prosecutorial misconduct:
 a. the prosecutor's expressing her personal opinion that Dill was guilty;
 b. the prosecutor's vouching for the credibility of state's witnesses;
 c. the prosecutor's imploring jurors to "do their duty" in both the guilt and sentencing phases of trial;
 d. the prosecutor's numerous comments on Dill's exercise of his right against self-incrimination; and
 e. the prosecutor's commenting upon Dill's pre-arrest silence.
 8. His counsel failed to object to testimony concerning Dill's oral statement to the police.
 9. His counsel failed to object to the following alleged instances of "repeated hearsay":
a. hearsay testimony of Dr. Langford;
b. hearsay testimony of Abbie Dill; and
c. hearsay testimony of Terry Dill.
 10. His counsel failed to object when a state's witness improperly gave a lay opinion.
 11. His counsel failed to object to the admission of testimony by the coroner regarding the relative position of the parties at the time of the shooting.
 12. His counsel failed to object to the prosecutor's alleged mischaracterization of Dill's statement to police.
 13. His counsel failed to request a curative instruction for testimony regarding Dill's prior criminal history.
 14. His counsel failed to object to the prosecutor's comments on Dill's right to counsel.
 15. His counsel failed to object to the coroner's testimony that allegedly went to an ultimate issue.
 16. His counsel failed to object to the following additional alleged instances of prosecutorial misconduct:
 a. the prosecutor's reference to the cause of death as a "shotgun blast" to the head;
 b. the prosecutor's reminder to the jury to consider the victim's family;
 c. the prosecutor's use of religion to argue that Dill should be convicted; and
 d. the prosecutor's expression of her personal knowledge of cocaine and the effects of its usage.
 18. His counsel failed to request a jury instruction that the jury should take no adverse inference from Dill's failure to testify.
 19. His counsel failed to object to the trial court's instruction on reasonable doubt.
 20. His counsel failed to object to the prosecutor's arguments that mitigating circumstances are limited to those listed in the Alabama Code.
 21. His counsel failed to object to the trial court's allegedly deficient jury instructions on aggravating and mitigating circumstances.
 22. His counsel failed to object to the alleged hearsay components of Dill's presentence report, which had been prepared over five years before Dill's capital murder conviction in connection with Dill's prior conviction for another offense.
 23. His counsel failed to object to the alleged hearsay components of the presentence report ordered by the trial court pursuant to § 13A-5-47(b), Ala. Code 1975.
 24. His counsel failed to object to the admission of proof of Dill's certified prior convictions.
 25. His counsel failed to raise the issue whether "the money allegedly stolen from [the victim] had already been *Page 376 
forfeited to the federal government." (Appellant's brief at p. 88.)
Dill presented no evidence in support of these claims in his Rule 32 hearing. Therefore, Dill has failed to establish that his trial counsel's performance was deficient and that he was prejudiced by that deficient performance.
Moreover, the claims presented in paragraphs 6(a) and (c); paragraphs 7(a), (b), (c), (d), (e), and (f); paragraph 8; paragraphs 9(a), (b), and (c); paragraph 13; paragraph 14; paragraph 15; paragraphs 16(b), (c), and (d); paragraph 19; paragraph 20; paragraph 21; paragraph 22; paragraph 23; and paragraph 24 were raised as substantive grounds for relief on direct appeal. See Dill v. State, supra. This court rejected these claims on their merits. Therefore, Dill has failed to support the claim, as set out above, that his trial counsel was ineffective for not raising these claims at trial. Dill's counsel cannot be ineffective for failing to pursue nonmeritorious claims.
Additionally, Dill made unsupported allegations in paragraph 1, paragraph 2, paragraph 3, paragraph 4, paragraph 5, paragraph 6(b), paragraph 10, paragraph 11, paragraph 12, paragraph 16(a), paragraph 18, and paragraph 25. Although the burden of pleading and proof was on Dill, Rule 32.3, Ala.R.Crim.P., he presented no evidence at the hearing to support his claims that his counsel's performance with regard to these claim asserted in these paragraphs fell "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690,104 S.Ct. at 2066. These claims failed to satisfy the burden-of-proof requirements of Rule 32.3. Furthermore, Dill presented no evidence to show how he was prejudiced by these alleged instances of ineffective assistance. McNair v. State, 706 So.2d 828
(Ala.Cr.App. 1997), cert. denied, 523 U.S. 1064, 118 S.Ct. 1396,140 L.Ed.2d 654 (1998).
Moreover, with regard to the above claims of ineffective assistance, which were argued in the pleadings but not pursued at the hearing, the trial court stated:
 "All other allegations of ineffective assistance of counsel have not been argued, but this Court having tried this case finds that defense counsel was diligent and competent in his representation of the defendant. And he was not deficient."
(C. 30.)
We agree with the trial court's ruling that Dill failed to present any evidence in support of these allegations and that his counsel's performance has not been shown to be deficient with regard to these matters. As this court observed in Stringfellow v. State, 485 So.2d 1238, 1243 (Ala.Cr.App. 1986), "`[e]ffectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made.'"
Finally, we note that in his petition Dill claims that his counsel was ineffective for "failing to include in a motion for a new trial each and every constitutional violation enumerated" in his petition. Dill, however, abandons this claim on appeal. "`"[A]llegations . . . not expressly argued on . . . appeal . . . are deemed by us to be abandoned." United States v. Burroughs,650 F.2d 595, 598 (5th Cir.), cert. denied, 454 U.S. 1037,102 S.Ct. 580, 70 L.Ed.2d 483 (1981).'" Brownlee v. State,666 So.2d 91, 93 (Ala.Cr.App. 1995), quoting Burks v. State, 600 So.2d 374,380 (Ala.Cr.App. 1991). In an exercise of diligence, however, we have reviewed each allegation of ineffective assistance of counsel and have found either that it is without merit or that Dill failed to prove it. We have also reviewed the alleged errors for any cumulative effect and still find no error or violation of Dill's rights.
After reviewing the overwhelming evidence against Dill, including his confession, we believe that while his trial counsel may have made certain strategic choices that Dill now challenges, counsel did not render *Page 377 
ineffective assistance. An accused is entitled "`not [to] errorless counsel, and not [to] counsel judged ineffective by hindsight, but [to] counsel reasonably likely to render and rendering reasonably effective assistance.'" Thompson v. State, 615 So.2d 129, 134
(Ala.Cr.App. 1992), cert. denied, 510 U.S. 976, 114 S.Ct. 467,126 L.Ed.2d 418 (1993), quoting Haggard v. Alabama, 550 F.2d 1019,1022 (5th Cir. 1977). We find no merit to any of Dill's allegations of ineffective assistance of counsel. Dill has not shown "by a preponderance of the evidence the facts necessary to entitle [him] to relief" on any issue concerning the ineffectiveness of his trial counsel. Rule 32.3, Ala.R.Crim.P.
 II.
Additionally, we note that numerous claims in Dill's petition, which Dill abandoned at the evidentiary hearing and on appeal, were precluded by Rule 32.2(a), Ala.R.Crim.P. This court has recognized that "[t]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed." Tarver, 629 So.2d at 19. See Horsley v. State, 675 So.2d 908 (Ala.Cr.App. 1996); Grayson v. State,675 So.2d 516 (Ala.Cr.App. 1995), cert. denied, 519 U.S. 934,117 S.Ct. 309, 136 L.Ed.2d 225 (1996); Brownlee, 666 So.2d at 93; and Cade, 629 So.2d 38.
We find that the following claims in Dill's petition are procedurally barred under Rules 32.2(a)(2) and (4), Ala.R.Crim.P., because they were raised and addressed at trial and on direct appeal:
1. Dill's claim that the trial court erred by permitting a police officer to testify about, and to read from, Dill's pre-arrest statement to the police. Ex parte Dill, 600 So.2d 372,373-74 (Ala. 1992).
2. Dill's claim that the trial court erred by failing to follow through on his order for a psychiatric examination of Dill. Dill,600 So.2d at 370.
3. Dill's claim that the trial court erred by failing to order a mistrial when the prosecutor made what Dill argued were inflammatory comments regarding his alleged religious beliefs. Dill, 600 So.2d at 356-57.
4. Dill's claim that the trial court erred by failing to order a mistrial after the prosecutor expressed a personal opinion as to his guilt. Dill, 600 So.2d at 357-58.
5. Dill's claim that the trial court erred by failing to order a mistrial after the prosecutor vouched for the credibility of state's witness Terry Dill. Dill, 600 So.2d at 358-59.
6. Dill's claim that a state's witness improperly referred to Dill's parole officer during testimony. Ex parte Dill,600 So.2d at 373-74.
7. Dill's claim that the trial court erred by failing to give a curative instruction, or to order a mistrial, after a state's witness referred to Dill's parole officer during testimony. Ex parte Dill, 600 So.2d at 373-74.
8. Dill's claim that the trial court erred by failing to order a mistrial when the prosecutor urged jurors to "do their duty" during the sentencing phase of the trial. Dill, 600 So.2d at 357.
9. Dill's claim that the prosecutor used 6 of her 12 strikes to strike blacks, in violation of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712 (1986). Dill, 600 So.2d at 354.
10. Dill's claim that the prosecutor improperly struck prospective jurors on the basis of their "economic status." Dill, 600 So.2d at 354.
11. Dill's claim that the trial court erred by permitting the alleged hearsay testimony of Dr. Langford, including an opinion as to the cause of death, which was based on notes made by another doctor, Dr. Shugerman. Dill, 600 So.2d at 365-66.
12. Dill's claim that he was denied the opportunity to confront a witness against him when Dr. Langford put words into the *Page 378 
mouth of Dr. Shugerman, who was not a witness at his trial. Dill,600 So.2d at 365-66.
We find that the following claims in Dill's petition are procedurally barred under Rules 32.2(a)(3) and (4), Ala.R.Crim.P., because even though they could have been, but were not, raised at trial, they were raised and addressed on direct appeal:
1. Dill's claim that the prosecutor made numerous references to his failure to testify at trial. Dill, 600 So.2d at 355-59.
2. Dill's claim that the prosecutor and a state's witness improperly commented on Dill's pre-arrest silence. Dill,600 So.2d at 355-56.
3. Dill's claim that the prosecutor improperly commented on his right to counsel. Dill, 600 So.2d at 354-55.
4. Dill's claim that the trial court erred by failing to ask prospective jurors whether they had fixed opinions in favor of the death penalty. Dill, 600 So.2d at 363.
5. Dill's claim that the trial court erred by allowing into evidence the alleged hearsay testimony from Terry Dill. Dill,600 So.2d at 367.
6. Dill's claim that the prosecutor made the following additional prejudicial and improper comments during trial:
 a. The prosecutor's emotional appeal regarding the victim's children. Dill, 600 So.2d at 366-67.
 b. The prosecutor's comments on her personal experience and knowledge of cocaine use and the effects of its use. Dill, 600 So.2d at 366-67.
7. Dill's claim that the trial court erred by allowing the coroner to testify as to the cause of death and by allowing the coroner to describe the death as a "homicide," all of which, he said, invaded the province of the jury. Dill, 600 So.2d at 366.
8. Dill's claim that the trial court erred by improperly instructing the jury on "reasonable doubt." Dill,600 So.2d at 353.
9. Dill's claim that the trial court erred by failing to instruct the jury on causation and on the lesser included offenses of robbery in the first degree, assault in the first degree, and attempted murder. Dill, 600 So.2d at 352-53, 359-60.
10. Dill's claim that robbery in the first degree, an element of capital murder, was improperly included as an aggravating circumstance. Dill, 600 So.2d at 371.
11. Dill's claim that the trial court erred by permitting a witness at the sentencing phase to read the contents of a pre-sentence report that had been prepared over five years earlier in connection with his prior convictions. Dill, 600 So.2d at 369-70.
12. Dill's claim that the trial court erred by admitting into evidence certified copies of his prior convictions. Dill,600 So.2d at 363-64.
13. Dill's claim that the prosecutor improperly sought to limit the mitigating circumstances that the jury could consider, in violation of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954 (1978), during voir dire and during her argument at the sentencing hearing. Dill, 600 So.2d at 357, 359.
14. Dill's claim that the trial court's charge to the jury regarding mitigating circumstances and aggravating circumstance may have given the jury the impression that it had to be unanimous in finding the existence of a mitigating circumstance. Dill, 600 So.2d at 360-62.
15. Dill's claim that the trial court erred by considering the pre-sentence report that was ordered pursuant to § 13A-5-47(b), Ala. Code 1975. Dill, 600 So.2d at 369-70.
We find that the following claims in Dill's petition are procedurally barred under Rules 32.2(a)(3) and (5), Ala.R.Crim.P., because they could have been raised at trial and on direct appeal, but were not:
1. Dill's claim that the trial court erred by failing to instruct the jury that it should *Page 379 
take "no adverse inference" from his failure to testify.
2. Dill's claim that he was denied a fair trial because jurors D.M., J.H., and M.H., who he says were biased against him, were empaneled and served on the jury.
3. Dill's claim that the trial court erred by allowing into evidence alleged hearsay testimony from Abbie Dill.
4. Dill's claim that the trial court erred by failing to order a mistrial when the prosecutor urged jurors to "do their duty [and find the defendant guilty]" during the guilt phase of his trial.
5. Dill's claim that the prosecutor made the following prejudicial and improper comments during his trial:
 a. The prosecutor's alleged misstatement of Officer Duncan's testimony concerning Dill's statement to the police.
 b. The prosecutor's allegedly improper statement that Dill caused the victim's death by a "shotgun blast."
6. Dill's claim that "Dr. Brissie, the coroner, improperly testified, and the prosecutor improperly argued, about the position of the shooter relative to the body of the victim based solely on medical records and an examination of the wound." (C. 42.)
7. Dill's claim that the trial court erred by admitting in evidence postmortem photographs of Leon Shaw as well as photographs of Shaw's children and the bloody automobile.
8. Dill's claim that the trial court erred and confused the jury when, referring to Terry Dill's criminal past, it stated, "Mr. Dill had one theft case, a shoplifting case, but all those cases [are ones] of moral turpitude." (C. 45.)
9. Dill's claim that the trial court erred by failing to instruct the jury that "it must find that there was no robbery, and hence no robbery/murder, if it believed that Shaw's money was from the drug trade which would render [the money] incapable of ownership by Shaw." (C. 45.)
10. Dill's claim that there was a variance between the indictment and the proof, because the indictment charged that the money was the "property of Leon Shaw," but the money actually belonged to the United States of America.
11. Dill's claim that robbery in the first degree was improperly allowed as an element of the capital crime with which he was charged even though the robbery charge against him, as a separate offense, had been dismissed before trial.
12. Dill's claim that the death penalty has been applied in Alabama in a racially discriminatory manner.
We find Dill's claim that the trial court erred by failing to order a mistrial after the prosecutor vouched for the credibility of state's witness Abbie Dill to be procedurally barred under Rules 32.2(a)(2) and (5), Ala.R.Crim.P., because it was raised and addressed at trial and could have been raised and addressed on direct appeal, but was not.
As noted above, this court on direct appeal searched the entire transcript for error, pursuant to Rule 45A, Ala.R.App.P. Had this court found anything that would merit reversal, even if it had not been raised on appeal, it would have reversed the judgment and remanded this case for a new trial. After evaluating the evidence presented at the evidentiary hearing on Dill's Rule 32 petition, we conclude that the trial court correctly denied the petition. Accordingly, the trial court's judgment is affirmed.
AFFIRMED.
McMillan, Cobb, Baschab, and Fry, JJ., concur. *Page 380