[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 735 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 736 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 737 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 738 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 739 
Willie C. Dobyne appeals from the denial of his petition for postconviction relief filed pursuant to Rule 32, Ala.R.Crim.P, challenging his 1992 conviction for murder made capital because the murders occurred during the course of a robbery in the first degree. See §13A-5-40(a)(2), Ala. Code 1975; Dobyne v. State, 672 So.2d 1319
(Ala.Cr.App. 1994). After remanding the cause for the trial court to amend its order to reflect whether it had considered all the evidence offered in mitigation, this Court affirmed Dobyne's conviction and the sentence of death. Dobyne v. State, 672 So.2d 1353 (Ala.Cr.App. 1994). The Alabama Supreme Court affirmed this Court's judgment, Ex parteDobyne, 672 So.2d 1354 (Ala. 1995), and the United States Supreme Court denied certiorari review, Dobyne v. Alabama, 517 U.S. 1169,116 S.Ct. 1571, 134 L.Ed.2d 670 (1996).
On April 15, 1997, Dobyne filed a Rule 32 petition attacking his conviction and sentence. On November 21, 1997, Dobyne filed an amended petition. The circuit court permitted the parties to conduct broad discovery, including the taking of depositions from Dobyne's trial counsel. The circuit court held that many of the claims presented in Dobyne's petition were procedurally barred, but it conducted an evidentiary hearing on Dobyne's claim of juror misconduct. In a thorough 40-page order, issued on September 4, 1998, the circuit court denied all relief.
The essential facts of this case were recited by the Alabama Supreme Court in Ex parte Dobyne, supra: *Page 740 
 "Linda Snipes and Leon Billingsley were both employees of the County Truck Stop outside Brent, Alabama. Early one morning in January 1991, Dobyne and his codefendant, Cleophus Dukes, went to the County Truck Stop. As they entered the truck stop, Dobyne shot Billingsley in the back with a shotgun, and Dukes shot Snipes in the upper chest and neck also with a shotgun. Both victims died as a result of their wounds. After the shootings, Dobyne and Dukes took Snipes's purse and the cash register, containing approximately $200. They disposed of the cash register and shotguns.
 "In May 1991, Dobyne told his half-brother, Joshua Suttles, of his involvement in the shootings. In June 1991, Suttles told the sheriff about Dobyne's involvement in the shootings. Suttles agreed to be wired with a transmitter and to talk to Dobyne. After Suttles met and talked with him, Dobyne surrendered to the police."
672 So.2d at 1356.[1]
Initially, we note that on direct appeal all issues were scrutinized, including those issues reviewable only under the "plain-error" doctrine. See 672 So.2d at 1354, 672 So.2d at 1359. We further note that even though this petition challenges a capital conviction and a death sentence, there is no plain-error review on an appeal from the denial of a Rule 32 petition. Pierce v. State, [Ms. CR-96-1668, Mar. 2, 1999] ___ So.2d ___ (Ala.Cr.App. 1999).
 "`When reviewing a trial court's ruling on a postconviction petition, this Court must determine whether the trial court abused its discretion. Jones v. State, 724 So.2d 75 (Ala.Cr.App. 1998); Elliott v. State, 601 So.2d 1118 (Ala.Cr.App. 1992).' Brown v. State, [Ms. CR-98-0343, October 11, 1999] ___ So.2d ___ (Ala.Cr.App. 1999). Moreover, it is well settled that `[i]f the circuit judge has personal knowledge of the facts underlying the allegations in the [Rule 32] petition, he may deny the petition without further proceedings so long as he states the reasons for the denial in a written order.' Sheats v. State, 556 So.2d 1094, 1095 (Ala.Cr.App. 1989)."
Payne v. State, 791 So.2d 383, 394 (Ala.Cr.App. 2000). The judge in this Rule 32 proceeding, Judge Jack Meigs, also presided over Dobyne's trial. We recognize that Judge Meigs was in a much better position than is this Court to consider Dobyne's claims because of his personal knowledge of the facts surrounding Dobyne's allegations. Payne v. State, supra.
 "`The court may properly dispose of those allegations [that are meritorious on their face] without an evidentiary hearing under one of two sets of circumstances. First, if it has before it "facts supporting the position of each party [that] are fully set out in . . . supporting affidavits." Johnson v. State, 564 So.2d 1019, 1021 (Ala.Cr.App. 1989) (relying on Temp. Rule 20.9(a), Ala.R.Cr.P., now Rule 32.9(a), which states, in part, that "the court in its discretion may take evidence by affidavits, written interrogatories, or depositions, in lieu of an evidentiary hearing"). Second, if the events that serve as the basis of the . . . allegation were observed by the same judge who rules on the Rule 32 petition. Ex parte Hill, 591 So.2d 462, 463 (Ala. 1991) (wherein the court held that "a judge who presided over the trial or other proceeding and observed the conduct of the attorneys at the trial or other proceeding need not hold a hearing *Page 741 
on the effectiveness of those attorneys based upon the conduct that he observed"). See also Benefield v. State, 583 So.2d 1370, 1370 (Ala.Cr.App. 1991) (wherein the court noted that meritorious allegations "warrant either an evidentiary hearing or an adequate explanation for their denial"). In the event that the circuit judge has personal knowledge of the actual facts underlying any of Harper's allegations, he may deny the allegations without further proceedings on those allegations so long as he states the specific reasons for the denial in his written order. See Sheats v. State, 556 So.2d 1094 (Ala.Cr.App. 1989).'"
Burton v. State, 728 So.2d 1142, 1145 (Ala.Cr.App. 1997), quotingHarper v. State, 676 So.2d 949, 950 (Ala.Cr.App. 1995).
In this case, the circuit court conducted an evidentiary hearing on the juror-misconduct claim and considered depositions as evidence in support of the other claims. The circuit court entered an extensive order explaining its findings. This procedure complies with Rule 32.9(a), Ala.R.Crim.P.
 I.
Dobyne claims that he was "denied his right to a judicial determination of the facts and the law when the circuit court signed an order written by the state's lawyers without making a single change." (Dobyne's brief to this Court at p. 1.) Specifically, Dobyne argues that the circuit court's adoption of the order drafted by the state was error, because, he says, the findings in the order ignored evidence and made questionable credibility choices and the circuit court provided no independent analysis. We note that although Dobyne specifically challenges various credibility findings in the circuit court's order on the ground that the circuit court did not indicate that it had considered all the evidence available, Dobyne does not allege that any of the findings were based on incorrect facts or misinterpreted evidence.
 "`While the practice of adopting the state's proposed findings and conclusions is subject to criticism, the general rule is that even when the court adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518
(1985); Hubbard v. State, 584 So.2d 895 (Ala.Cr.App. 1991); Weeks v. State, 568 So.2d 864 (Ala.Cr.App. 1989), cert. denied, [498] U.S.[882], 111 S.Ct. 230, 112 L.Ed.2d 184 (1990); Morrison v. State, 551 So.2d 435
(Ala.Cr.App.), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990).'
 "Bell v. State, 593 So.2d 123, 126 (Ala.Cr.App. 1991), cert. denied, 593 So.2d 123 (Ala.), cert. denied, 504 U.S. 991, 112 S.Ct. 2981, 119 L.Ed.2d 599
(1992)."
Jones v. State, 753 So.2d 1174 (Ala.Cr.App. 1999).
We have reviewed the evidence presented to the circuit court, and we conclude that the record supports the majority of the findings in the circuit court's order. Mainly, the findings and conclusions of the circuit court, although initially drafted by the State, present a fair and accurate statement and analysis of the evidence presented to the circuit court. To the extent that this Court finds that the circuit court based its judgment on an incorrect reason, the law is well settled that unless we find that the circuit court abused its discretion we are not required to reverse the judgment.
 "Although the circuit court stated incorrect reasons for its denial of the petition *Page 742 
with respect to some of the claims, we are not required to reverse its judgment in this case. If the circuit court's ruling denying a post-conviction petition is correct for any reason, we will not reverse simply because the circuit court stated an incorrect reason for the denial. Sumlin v. State, 710 So.2d 941 (Ala.Cr.App. 1998); Long v. State, 675 So.2d 532 (Ala.Cr.App. 1996); Swicegood v. State, 646 So.2d 159 (Ala.Cr.App. 1994); Roberts v. State, 516 So.2d 936 (Ala.Cr.App. 1987); Jenkins v. State, 516 So.2d 935 (Ala.Cr.App. 1987)."
Pierce v. State, ___ So.2d at ___.
Moreover, as previously noted, the circuit judge who presided over this Rule 32 proceeding also presided over Dobyne's trial; the circuit judge was thoroughly familiar with the case. After reviewing the record in this case, we find that the circuit court's order denying Dobyne's postconviction relief represents the circuit court's independent judgment and its considered conclusions. Therefore, we conclude that the circuit court did not commit reversible error by adopting the order drafted by the state.
 II.
In his petition, Dobyne presents numerous claims regarding the performance of his trial counsel, most alleging acts and omissions of his counsel during their preparation for trial and at trial, which, he says, violated his rights guaranteed by the laws and the Constitution of Alabama and by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Dobyne claims that as a result of his trial counsel's errors he was denied effective assistance of counsel.
 "In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
 "`First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.'
"466 U.S. at 687, 104 S.Ct. at 2064.
 "`The performance component outlined in Strickland
is an objective one: that is, whether counsel's assistance, judged under "prevailing professional norms," was "reasonable considering all the circumstances."' Daniels v. State, 650 So.2d 544, 552
(Ala.Cr.App. 1994), cert. denied, [514 U.S. 1024, 115 S.Ct. 1375, 131 L.Ed.2d 230 (1995)], quoting Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. `A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.
 "The claimant alleging ineffective assistance of counsel has the burden of showing that counsel's assistance was ineffective. Ex parte Baldwin, 456 So.2d 129 (Ala. 1984), aff'd, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). *Page 743 
`Once a petitioner has identified the specific acts or omissions that he alleges were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall "outside the wide range of professionally competent assistance." [Strickland,] 466 U.S. at 690, 104 S.Ct. at 2066.' Daniels, 650 So.2d at 552. When reviewing a claim of ineffective assistance of counsel, this court indulges a strong presumption that counsel's conduct was appropriate and reasonable. Hallford v. State, 629 So.2d 6
(Ala.Cr.App. 1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994); Luke v. State, 484 So.2d 531 (Ala.Cr.App. 1985). `This court must avoid using "hindsight" to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance.' Hallford, 629 So.2d at 9. See also, e.g., Cartwright v. State, 645 So.2d 326
(Ala.Cr.App. 1994).
 "`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'
"Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 (citations omitted). SeeEx parte Lawley, 512 So.2d 1370, 1372 (Ala. 1987).
 "`Even if an attorney's performance is determined to be deficient, the petitioner is not entitled to relief unless he establishes that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Strickland,] 466 U.S. at 694, 104 S.Ct. at 2068.'
"Daniels, 650 So.2d at 552.
 "`When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'
"Strickland, 466 U.S. at 697, 104 S.Ct. at 2069, quoted in Thompson v.State, 615 So.2d 129, 132 (Ala.Cr.App. 1992), cert. denied, 510 U.S. 976,114 S.Ct. 467, 126 L.Ed.2d 418 (1993).
 "In a Rule 32 proceeding, the petitioner has `the burden of pleading and proving by a preponderance of the evidence *Page 744 
the facts necessary to entitle the petitioner to relief.' Rule 32.3, Ala.R.Crim.P. See Fortenberry v. State, 659 So.2d 194 (Ala.Cr.App. 1994), cert. denied, 516 U.S. 846, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995); Wilson v. State, 644 So.2d 1326 (Ala.Cr.App. 1994); Elliott v. State, 601 So.2d 1118 (Ala.Cr.App. 1992)."
Bui v. State, 717 So.2d 6, 12-13 (Ala.Cr.App. 1997), cert. denied,717 So.2d 6 (Ala. 1998).
Moreover, "[a] finding of no plain error is one factor to consider when assessing the performance of counsel." Fortenberry, 659 So.2d 194, 200
(Ala.Cr.App. 1994), cert. denied, 516 U.S. 846, 116 S.Ct. 137,133 L.Ed.2d 84 (1995), quoting Hallford, 629 So.2d 6, 10 (Ala.Cr.App. 1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994). "`A finding of no manifest injustice under the "plain error" standard on a direct appeal serves to establish a finding of no prejudice under the test for ineffective assistance of counsel provided in Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).'"Williams v. State, 783 So.2d 108, 133 (Ala.Cr.App. 2000), quoting Statev. Clark, 913 S.W.2d 399, 406 (Mo.Ct.App. 1996). See also Thomas v.State, 766 So.2d 860 (Ala.Cr.App. 1998).
Dobyne was represented at trial by William D. Owings and Jadd Fawwal. Both attorneys were deposed by the parties during discovery. Their depositions indicate that they are experienced attorneys who had extensive criminal-law experience at the time they represented Dobyne. Owings indicated that before he was appointed to represent Dobyne he had handled approximately 100 felony cases and had tried 10 to 15 criminal cases. Owings admitted that Dobyne was the first defendant he represented who was charged with capital murder. To prepare for trial Owings consulted heavily with the Capital Resource Center, a group assisting attorneys in capital-murder litigation, and relied upon its publications in preparing the defense. According to Owings he received assistance from cocounsel Fawwal, an investigator, an expert psychiatrist, and an attorney from the Southern Center for Human Rights.
Fawwal's deposition also indicated that at the time he was appointed to represent Dobyne he had had extensive experience in criminal law and had participated in 11 capital-murder trials.
 A.
Dobyne contends that the circuit court erred in summarily dismissing several of his claims of ineffective assistance of counsel. Many of Dobyne's ineffective-assistance-of-counsel claims alleged that trial counsel was ineffective for not raising claims that were raised and addressed by this Court on appeal. The circuit court concluded that based on this Court's and the Supreme Court's analysis and their rejection of the substantive bases on appeal of several ineffective-assistance-of-trial-counsel claims, Dobyne had not met the prejudice prong of Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
This Court, in Stringfellow v. State, 485 So.2d 1238, 1243
(Ala.Cr.App. 1986), stated, "'[e]ffectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made.'" We agree with the circuit court that Dobyne has failed to establish that the outcome of his trial would have been different with regard to the following claims:
 1. Dobyne's claim that trial counsel unreasonably failed to investigate, and to present evidence of, the wholesale removal of disabled jurors from the jury *Page 745 
venire. (Claim Z.a. in Dobyne's first amended petition at C.R. 361.) See 672 So.2d at 1356-57.[2]
 2. Dobyne's claim that trial counsel unreasonably failed to move to quash the improperly drawn indictment on the grounds that it combined the two offenses of capital murder of two victims into a single count. (Claim Z.d. in Dobyne's first amended petition at C.R. 362.) See 672 So.2d at 1325-26.
 3. Dobyne's claim that trial counsel unreasonably failed to move to quash the improperly drawn indictment on the grounds that it failed to allege that the property stolen was the property of the victim against whom force was used. (Claim Z.e.1. in Dobyne's first amended petition at C.R. 362.) See 672 So.2d at 1326.
 4. Dobyne's claim that trial counsel unreasonably failed to pursue his motion to discover the grand jury testimony. (Claim Z.f. in Dobyne's first amended petition at C.R. 362.) See 672 So.2d at 1333 (stating that there was no testimony during the grand jury proceedings).
 5. Dobyne's claim that his trial counsel unreasonably failed to present sufficient evidence in support of his motion for a change of venue. (Claim Z.g. in Dobyne's first amended petition at C.R. 362.) See 672 So.2d at 1330 (stating that because the voir dire examination of the potential jurors had established that the pretrial publicity would not affect a determination of Dobyne's guilt, with the exception on one potential juror who was excused for cause, the trial court did not err in denying Dobyne's motion for a change of venue).
 6. Dobyne's claim that his trial counsel unreasonably waived his right to be present during the hearing on Mr. Dobyne's motion to quash the jury venire, and unreasonably failed to object to conducting the hearing in Mr. Dobyne's absence. (Claim Z.i. in Dobyne's first amended petition at C.R. 363.) See 672 So.2d at 1329-30 (stating that Dobyne did not show at trial or on appeal how he was prejudiced by his absence from the pretrial hearing).
 7. Dobyne's claim that his trial counsel unreasonably failed to object to the trial court's allegedly improper instruction *Page 746 
to the jury that it could convict Dobyne of the capital murder of Leon Billingsley while acquitting him of the capital murder of Linda Snipes, and to the trial court's improper instruction inviting the jury to find him guilty of capital murder of Linda Snipes regardless of whether he intended her death. (Claim Z.k. in Dobyne's first amended petition at C.R. 363-64.) See 672 So.2d at 1341-42.
 8. Dobyne's claim that his trial counsel unreasonably failed to object to the trial court's allegedly improper jury instruction on reasonable doubt. (Claim Z.l. in Dobyne's first amended petition at C.R. 364.) See 672 So.2d at 1342-44.
 9. Dobyne's claim that his trial counsel unreasonably failed to object to the trial court's improper jury instruction on witness credibility. (Claim Z.m. in Dobyne's first amended petition at C.R. 364.) See 672 So.2d at 1344-45.
 10. Dobyne's claim that his trial counsel unreasonably failed to request that the trial court instruct the jury that it could not rely on his confession if the jury determined that the confession was not voluntarily given and unreasonably failed to object to the court's failure to give such an instruction. (Claim Z.n. in Dobyne's first amended petition at C.R. 364.) See 672 So.2d at 1345.
 11. Dobyne's claim that his trial counsel unreasonably failed to request that the trial court instruct the jury on the lesser-included offense of felony murder and unreasonably failed to object to the trial court's failure to give such an instruction. (Claim Z.o.1. in Dobyne's first amended petition at C.R. 364.) See 672 So.2d at 1345.
 12. Dobyne's claim that his trial counsel unreasonably failed to investigate and object to what he says was the improper and inadequate information contained in the mental health report prepared at Taylor Hardin Secure Medical Facility, and unreasonably failed to object to the use of this information for any purpose other than determining competency and sanity. (Claim Z.q. in Dobyne's first amended petition at C.R. 364-5.) See 672 So.2d at 1352.
Although the burden of pleading and proof as to these arguments was on Dobyne, see Rule 32.3, Ala.R.Crim.P., he presented no facts to support his argument that his counsel's alleged inadequate performance prejudiced him.
 B.
Dobyne contends that his trial counsel failed to move for a competency hearing, and failed to investigate, and to present evidence to support, such a motion, and that counsel's failure to do so was unreasonable. (Claim Z.b. in Dobyne's first amended petition at C.R. 361.) Dobyne alleges, "if [his] trial lawyers had introduced sufficient evidence, the trial court would have been obliged to hold a competency hearing." (Dobyne's brief to this Court at p. 35.) Dobyne argues in his brief to this Court that the circuit court improperly prevented him from presenting evidence in support of this claim.
Dobyne, however, did not satisfy his burden of specificity with regard to this claim. Rule 32.6(b), Ala.R.Crim.P., states:
 "The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings."
Dobyne merely alleges that his counsel was ineffective for not adequately investigating *Page 747 
and presenting evidence to support a motion for a competency hearing. Dobyne does not offer any facts in his pleading that would support a motion for a competency hearing. Indeed, Dobyne acknowledges in his first amended petition that
 "the trial judge was confronted with extensive and significant evidence, before and during the trial of this case, that [he] had an I.Q. of only 73 and a mental age of 12 or 13 years, and [that he] suffered from Fetal Alcohol Syndrome as well as possible brain damage, aggravated by chronic alcoholism and cocaine abuse."
(C.R. 333.) Dobyne presents no additional or different facts that would support a finding that he was incompetent to stand trial. Thus, Dobyne has failed to establish that "but for" trial counsel's performance the trial court would have granted his motion for a competency hearing. Because Dobyne did not plead sufficient facts to warrant any further proceedings, the circuit court did not err in dismissing this claim.
 C.
Dobyne contends that his trial counsel failed to investigate, and to present evidence of, the systematic exclusion of black persons from serving as grand jury forepersons in Bibb County, and failed to move to quash the indictment on this ground. (Claim Z.c. in Dobyne's first amended petition at C.R. 361-62.) In support of this claim, Dobyne presented testimony that the sheriff and the district attorney selected the grand jury forepersons at the time he was indicted, based on their opinion as to who would be the most qualified to serve as foreperson.[3]
Additionally, he presented evidence that appears to indicate that from 1971 to the mid 1990s, no African-American had been selected to serve as a grand jury foreperson.
In Pace v. State, 714 So.2d 332, 337 (Ala. 1997), cert. denied,523 U.S. 1051, 118 S.Ct. 1372, 140 L.Ed.2d 520 (1998), the Alabama Supreme Court stated:
 "[T]hat if there was no discrimination in the selection of the members of a particular grand jury, the racial discrimination in the selection of a grand jury foreperson from among the members of that properly constituted grand jury may be a violation of a criminal defendant's equal protection rights, but it is not `plain error' that mandates reversal of a capital murder conviction in a case in which the defendant did not make a timely motion to quash the indictment. . . . Because the role of an Alabama grand jury foreperson is almost entirely ministerial, we conclude that discrimination in the selection of the foreperson of the otherwise properly constituted grand jury that indicted Pace did not deprive him of a fundamentally fair grand jury hearing or of a subsequent fair trial."
R.L. Foster, the Bibb County circuit clerk at the time of Dobyne's trial, testified that at the time the grand jury that indicted Dobyne was convened members of the grand jury were selected from a list of persons in the County who had been issued driver's licenses.
 "This court has observed that `"[r]andom selection from a list of licensed *Page 748 
drivers has [repeatedly] been held to be an acceptable manner in which to select a jury."' Stanton v. State, 648 So.2d 638, 640 (Ala.Cr.App. 1994), quoting Sistrunk v. State, 630 So.2d 147, 149 (Ala.Cr.App. 1993). See also Benefield v. State, 726 So.2d 286
(Ala.Cr.App. 1998); Travis v. State, 776 So.2d 819
(Ala.Cr.App. 1997); Smith v. State, 698 So.2d 189
(Ala.Cr.App. 1996), aff'd, 698 So.2d 219 (Ala.), cert. denied, 522 U.S. 957, 118 S.Ct. 385, 139 L.Ed.2d 300 (1997); Guthrie v. State, 689 So.2d 935
(Ala.Cr.App. 1996); Dobyne v. State, 672 So.2d 1319
(Ala.Cr.App. 1994); Stewart v. State, 623 So.2d 413
(Ala.Cr.App. 1993); Joyce v. State, 605 So.2d 1243
(Ala.Cr.App. 1992); Pierce v. State, 576 So.2d 236
(Ala.Cr.App. 1990), cert. denied, 576 So.2d 258 (Ala. 1991); Robinson v. State, 560 So.2d 1130 (Ala.Cr.App. 1990); Jackson v. State, 560 So.2d 1100 (Ala.Cr.App. 1989); Vaughn v. State, 485 So.2d 388 (Ala.Cr.App. 1986); and Lopez v. State, 415 So.2d 1204
(Ala.Cr.App. 1982)."
Carroll v. State, [Ms. CR-97-1019, August 27, 1999] ___ So.2d ___ (Ala.Cr.App. 1999). Dobyne offers no evidence that the grand jury that returned his indictment was improperly constituted. Thus, because no discrimination occurred in the selection of the members of the grand jury that indicted Dobyne, Dobyne's claim that there was discrimination in the selection of the grand jury foreperson was not plain error. Pace, supra. Because we have concluded that this claim would not have constituted plain error, Dobyne has failed to establish the prejudice prong ofStrickland v. Washington, supra. See Williams v. State, 783 So.2d 108
(Ala.Cr.App. 2000).
We recognize that in Pace, supra, the Supreme Court stated:
 "If a defendant makes a timely and valid challenge to his or her indictment based on a violation of equal protection rights occurring as the result of discriminatory selection of the foreperson of the grand jury that returned the indictment, this Court will dismiss the indictment and require that if the State reindicts the accused it do so with a grand jury selected and acting free of any racial discrimination."
Pace v. State, 714 So.2d at 338.
First, we note that this was not the law at the time of Dobyne's trial and that trial counsel cannot be held to be ineffective for failing to forecast changes in the law. State v. Tarver, 629 So.2d 14, 18-19
(Ala.Crim.App. 1993).
We recognize that initially the Supreme Court's statement appears to presume prejudice if counsel fails to move to dismiss an indictment returned from a grand jury in which there was discriminatory selection of the grand jury foreperson. We conclude, however, based on the analysis inPace, that before a defendant can establish a claim of ineffective assistance of trial counsel, he must show actual prejudice. In reaching its decision in Pace, the Supreme Court emphasized that each case must be evaluated to determine whether the discriminatory selection of the foreperson impacted the integrity of the indictment process through the composition of the grand jury panel; whether it substantially impacted the integrity of the indictment process through the involvement of the foreperson; and whether it impacted the integrity of the indictment process through the foreperson's influence over the grand jury panel. The Supreme Court considered how each of these factors had impacted the return of the indictment, and concluded that unless the discriminatory selection of the foreperson substantially impacted the judicial process, that discriminatory selection did not render the process fundamentally unfair. We believe that such an analysis is required before *Page 749 
prejudice can be established from trial counsel's performance. Therefore, failure to object to discrimination in the selection of the grand jury foreperson is not a situation, like failure to make a Batson[4]
objection, where prejudice is presumed. See Ex parte Yelder, 575 So.2d 137
(Ala. 1991), cert. denied, 502 U.S. 898, 112 S.Ct. 273, 116 L.Ed.2d 225
(1991) (discussing the Strickland test, presumed prejudice, and Batson).
Thus, we conclude that in situations where counsel fails to object to what appears to be a discriminatory practice in the selection of a grand jury foreperson, the defendant in order to establish a claim of ineffective assistance of counsel must establish actual prejudice. The circuit court made the following findings of fact:
 "Guided by United States Supreme Court and Alabama Supreme Court precedent, this Court finds that trial counsel's failure to object to the grand jury foreman selection process and subsequent failure to move to quash the indictment did not prejudice Dobyne or render his trial fundamentally unfair. See Hobby v. United States, 468 U.S. 339, 345 (1984) (`Given the ministerial nature of the position, discrimination in the selection of one person from among the members of a properly constituted grand jury can have little, if indeed any, appreciable effect upon the defendant's due process right to fundamental fairness'). See also Ex parte Myers, 699 So.2d 1285, 1296 (Ala. 1997); Ex parte State of Alabama (In re Levi Pace), 714 So.2d 332
(Ala. 1997)]. But see Rose v. Mitchell, 443 U.S. 545
(1979) (constitutional rights violated where Tennessee grand jury foreman, who was `13th' voting member of grand jury, presided over grand jury, administered oaths to witnesses, signed indictments and subpoenas, worked closely with district attorney in the investigation of cases, and had virtual veto power over indictment, was handpicked from list of competent jurors in the jurisdiction, not from a properly constituted grand jury).
". . .
 "To prevail on this claim, Dobyne must show that, but for trial counsel not moving to quash the indictment, the result of the trial could have been different. Strickland, 466 U.S. at 694. Dobyne was convicted beyond a reasonable doubt by a trial jury that was properly selected in a nondiscriminatory fashion. That a jury selected in a nondiscriminatory fashion found that Dobyne was guilty beyond a reasonable doubt precludes a finding of `prejudice' under Strickland. `The impact of a grand jury foreman upon the criminal justice system and the rights of the person charged with crime is minimal and incidental at best.' Myers 699 So.2d at 1296, citing United States v. Hobby, 702 F.2d 466, 471 (4th Cir. 1983). For the foregoing reasons, it cannot be said that, but for trial counsel's failure to object to the grand jury foreman selection process, there was a reasonable probability that the outcome of Dobyne's trial would have been different. This Court holds that Dobyne's trial counsel rendered effective assistance of counsel under Strickland v. Washington and denies relief on this claim."
(C.R. 2847-50.)
The circuit court's findings are supported by the record and by the law; Dobyne has failed to establish that he was entitled to relief with regard to this claim. Dobyne has not established that the discriminatory *Page 750 
selection of the foreperson impacted the integrity of the indictment process through the composition of the grand jury panel, that it substantially impacted the integrity of the indictment process through the involvement of the foreperson, or that it impacted the integrity of the indictment process through the foreperson's influence over the grand jury panel. Thus, Dobyne has failed to establish that there is a reasonable probability that "but for" counsel's performance the outcome would have been different.
 D.
Dobyne contends that his trial counsel was ineffective for failing to move to quash the indictment on the grounds that it did not allege that he had a specific intent to deprive the victims of their property. (Claim Z.e.2. in Dobyne's first amended petition at C.R. 362.)
Dobyne was indicted for capital murder-robbery. Count I of the indictment against Dobyne reads:
 "The Grand Jury of said County charge that before the finding of this indictment Willie C. Dobyne, whose name is otherwise unknown to the Grand Jury other than as stated, did intentionally cause the death of another person, to-wit: Linda Snipes and Leon Billingsley by shooting them with a shotgun, and Willie C. Dobyne caused said death during the time that he was in the course of committing a theft of United States Currency, the Property of County Truck Stop, by the use of force against the persons of Linda Snipes and Leon Billingsley, with intent to overcome their physical resistance or physical power of resistance, while the said Willie C. Dobyne was armed with a deadly weapon or dangerous instrument, to-wit: a shotgun, in violation of Section 13A-5-40(a)(2) of the Code of Alabama, against the peace and dignity of the State of Alabama."
(C.R. on direct appeal 868.)
The indictment plainly charged Dobyne with committing a murder during the course of a robbery. For an indictment to be valid, "it must clearly inform the accused of the offense with which he is being charged and must do so in language that is readily understood by the ordinary person."Thatch v. State, 432 So.2d 8, 10 (Ala.Cr.App. 1983). "As a general rule, an indictment is sufficient when it correctly follows the language of the statute provided the statute sets out with definiteness the elements of the offense." Smith v. State, 446 So.2d 68, 71 (Ala.Cr.App. 1984). This indictment included the facts constituting the robbery and stated them in ordinary and concise language that allowed Dobyne to prepare a defense. See § 13A-8-41, Ala. Code 1975. The fact that the indictment did not define the elements of theft does not make the indictment void.
Additionally, we note that the trial court's instruction defining capital murder-robbery specifically instructed the jury that "[a] person commits the crime of theft of property if he knowingly obtains or exerts unauthorized control over the property of another with intent to deprive the owner of his property." (R. on direct appeal 661.) Because the jury was properly instructed on the elements constituting the charged offense, especially the elements of theft, Dobyne has failed to show any prejudice with regard to this claim.
The indictment sufficiently apprised Dobyne of the charges against him; the indictment was not void. Dobyne has failed to establish that this contention is meritorious; therefore, Dobyne's trial counsel cannot be held to be ineffective for failing to raise this claim at trial. SeeDill v. State, 767 So.2d 366 (Ala.Cr.App. 1999) (stating that counsel cannot be held to be *Page 751 
ineffective for failing to raise a nonmeritorious claim).
 E.
Dobyne contends that his trial counsel failed to conduct a "sufficiently thorough" voir dire of potential jurors on issues, including, but not limited to, the issues of pretrial publicity, whether any jurors knew of Mr. Dobyne or his family, or knew of the victims or their families, and the jurors' feelings and opinions about the death penalty. (Claim Z.h. in Dobyne's first amended petition at C.R. 363.) Specifically, Dobyne argues that his trial counsel was ineffective for not conducting an adequate voir dire to inquire into the prospective jurors possible racial bias. Dobyne offers no support for this contention, other than a statement that he was entitled to such an inquiry. While it may be true that Dobyne was "entitled" to question the prospective jurors about their biases, that fact alone does not establish that counsel was ineffective for failing to conduct an inquiry. See Strickland, supra. Dobyne did not ask his trial counsel any questions about why they did not question prospective jurors about possible racial bias. Thus, Dobyne has not overcome the presumption that counsel rendered effective assistance.
Additionally, without a showing of actual prejudice resulting from trial counsel's performance during voir dire, we cannot conclude that trial counsel was ineffective. As the circuit court states, "In light of the full confession that was presented to the jury, it is impossible to hold that questioning jurors about racial bias would have, with reasonable probability, produced a different outcome in this case." (C.R. 2852.) Dobyne has not demonstrated that he is entitled to relief with regard to this claim.
 F.
Dobyne contends that his trial counsel failed to investigate the circumstances surrounding Dobyne's making a highly incriminating statement, including, but not limited to, failing to investigate the circumstances under which Dobyne allegedly waived his right to remain silent and to counsel and failing to present evidence demonstrating that Dobyne was incapable of voluntarily waiving his rights to remain silent and counsel. (Claim Z.j. and u. in Dobyne's first amended petition at C.R. 363 and 365-66.) Specifically, Dobyne argues that during the hearing on his motion to suppress, trial counsel did not present "any of the powerful evidence of mental retardation, inability to read, and limited cognitive functioning." (Dobyne's brief to this Court at p. 74.)
On direct appeal this Court conducted a plain-error review of Dobyne's contention that he did not understand the Miranda rights that he purportedly waived and that, therefore, he could not have waived those rights. We noted that:
 "The appellant presented evidence of his diminished mental capacity during the sentencing phase of the trial. Dr. Robert Lyman, a psychologist, testified that the appellant had an IQ of 73, which places him in the borderline mentally retarded range, and the mental capability of a 12- or 13-year-old. The psychologist testified that tests revealed that the appellant suffered mild to moderate brain impairment in the areas of fine motor coordination, rhythm perception, speech, writing, reading, memory, and intellectual processes. Dr. Lyman also testified that the appellant exhibited the characteristics of someone afflicted with fetal alcohol syndrome.
 "Relatives and former teachers of the appellant also testified that the appellant's intelligence and mental skills were *Page 752 
below average. There was testimony that he attended special education classes and graduated from high school. Ethel Evans Jones, one of the appellant's high school teachers, testified that the appellant could read `some' but that, in her opinion, he could not have understood all the terms in the rights waiver form that he signed.
 "Dr. Kathy A. Rogers, a certified forensic examiner at Taylor Hardin Secure Medical Facility, evaluated the appellant to determine his competency to stand trial. Although Dr. Rogers recognized the appellant's limited mental capacity, she did not find any evidence of a major psychiatric disorder. Dr. Rogers found that his intelligence level would not affect his ability to stand trial or his ability to distinguish between right and wrong. In her evaluation report on the appellant, Dr. Rogers stated:
 "`Mr. Dobyne understood his current charges, as well as the seriousness of these charges. He demonstrated adequate understanding of the range and nature of possible penalties should he be convicted, and his appraisal of the likely outcome of his case was fairly reasonable. He demonstrated a basic understanding of the roles of various courtroom personnel, including the defense attorney, prosecuting attorney, judge, jury, defendant, and witness. He understood that the role of the judge was "he sentences you, tells you the court date." He understood that twelve people comprised a jury and that their job is to "tell if you're guilty or not guilty."'"
672 So.2d at 1336-37.
This Court concluded that "[a]lthough it is undisputed that [Dobyne's] mental capabilities were below average, but `average' is the middle mark, there is no evidence that [Dobyne] could not understand that he had the right to remain silent and that he had the right to an attorney." 672 So.2d at 1337.
The evidence Dobyne offered in support of this claim is cumulative of the evidence this Court evaluated on direct appeal. Dobyne has not presented any additional evidence, i.e., evidence not considered by this Court on direct appeal, that would have affected the determination that Dobyne's statement was voluntary. As this Court stated in Dobyne, "`"While an accused's intelligence and literacy are important factors to be considered in determining whether he intelligently and voluntarily waived his constitutional rights and made a confession, weak intellect or illiteracy alone will not render a confession inadmissible." Hobbs v.State, 401 So.2d 276, 282 (Ala.Cr.App. 1981).'" 672 So.2d at 1337, quoting Whittle v. State, 518 So.2d 793, 796-97 (Ala.Cr.App. 1987).
Because Dobyne has failed to offer any evidence that would establish that his statement was involuntary, he has also failed to establish that further investigation by trial counsel would have changed the outcome of the suppression hearing. Strickland, supra. Dobyne has not demonstrated that he is entitled to relief with regard to this claim.
 G.
Dobyne contends that his trial counsel failed to object to the "trial court's instructions to the jury that [it] could consider the lesser-included charges of murder and manslaughter only if [the jurors were] not convinced beyond a reasonable doubt that [he] was guilty of capital murder — in other words, only after they had acquitted him of capital murder." (C.R. 353.) (Claim Z.o.2. in Dobyne's first amended petition at C.R. 364.) *Page 753 
Initially, we note that Dobyne has failed to meet his burden of pleading specific facts with regard to this claim to entitle him to relief. He essentially makes a bare allegation of fact and reaches a conclusion of law; therefore, review of this claim is barred by Rule 32.6(b), Ala.R.Crim.P.
Moreover, this Court has reviewed the trial court's instruction to the jury. Although Dobyne does not refer this Court to the alleged error in the trial court's instruction, it appears that he challenges the following instruction:
 "Now, let's talk about lesser included offense[s]. You will only consider lesser included offenses if you are not reasonably — if you've not been convinced beyond a reasonable doubt that the State — if you're not convinced beyond a reasonable doubt that the State has proved all of the above elements of murder during robbery. If the State has failed to convince you beyond a reasonable doubt of any one or more of the elements of murder during robbery, then you will consider the lesser included offenses. The lesser included offenses to be considered by you in this case are murder and manslaughter."
(R. on direct appeal 663.)
This instruction is proper. See § 13A-5-41, Ala. Code 1975.
 "`When a greater and a lesser included offense are charged, the proper course is for the trial judge to instruct the jury to consider first the greater offense and then consider the lesser offense only if a reasonable doubt exists concerning the accused's guilt of the greater offense.' Bragg v. State, 453 So.2d 756, 759 (Ala.Cr.App. 1984) (emphasis in original). See also Lindsey v. State, 456 So.2d 383, 387 (Ala.Cr.App. 1983) (`The trial court's instruction to this effect, that the jury should not consider the lesser included offenses unless it found the appellant "not guilty" of the capital offense was in accordance with and justified by [§ 13A-5-41]'), affirmed, 456 So.2d 393 (Ala. 1984), cert. denied, 470 U.S. 1023, 105 S.Ct. 1384, 84 L.Ed.2d 403 (1985)."
Parker v. State, 587 So.2d 1072, 1084 (Ala.Cr.App. 1991), aff'd,610 So.2d 1181 (Ala. 1992), cert. denied, 509 U.S. 929,113 S.Ct. 3053, 125 L.Ed.2d 737 (1993).
Because this claim has no merit, Dobyne has failed to establish that his counsel was ineffective for not objecting to the instruction. SeeDill, supra.
 H.
Dobyne contends that his trial counsel failed to thoroughly investigate and to present evidence sufficient to prove that his ability to appreciate or control his actions at the time of the offense was substantially impaired. (Claim Z.p. in Dobyne's first amended petition at C.R. 364.)
Dobyne does not raise this claim on appeal. "`"[A]llegations . . . not expressly argued on . . . appeal . . . are deemed by us to be abandoned."United States v. Burroughs, 650 F.2d 595, 598 (5th Cir.), cert. denied,454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981).'" Brownlee v.State, 666 So.2d 91, 93 (Ala.Cr.App. 1995), quoting Burks v. State,600 So.2d 374, 380 (Ala.Cr.App. 1991). This is true even in an appeal from the denial of a Rule 32 petition in a death-penalty case. See Paynev. State, 791 So.2d 383 (Ala.Cr.App. 1999).
Moreover, we agree with the circuit court's finding that Dobyne did not present any evidence in support of this claim; therefore, Dobyne has not met his burden of pleading and proving by a preponderance of the evidence facts that would entitle him to relief. See Rule 32.3, Ala.R.Crim.P. *Page 754 
 I.
Dobyne contends that his trial counsel unreasonably failed to investigate, to uncover, and to present compelling mitigation evidence on his behalf at the sentencing phase of the trial. According to Dobyne, the mitigation evidence counsel should have presented includes, but is not limited to, evidence of his family history of alcohol abuse, abandonment, neglect, extreme poverty, and violence, and evidence of his limited ability to appreciate the consequences of his actions. (Claim Z.r. in Dobyne's first amended petition at C.R. 365.)
 "While counsel has a duty to investigate in an attempt to locate evidence favorable to the defendant, `this duty only requires a reasonable
investigation.' Singleton v. Thigpen, 847 F.2d 668, 669 (11th Cir.(Ala.) 1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 822, 102 L.Ed.2d 812 (1989) (emphasis added). See Strickland, 466 U.S. at 691, 104 S.Ct. at 2066; Morrison v. State, 551 So.2d 435 (Ala.Cr.App. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990). Counsel's obligation is to conduct a `substantial investigation into each of the plausible lines of defense.' Strickland, 466 U.S. at 681, 104 S.Ct. at 2061 (emphasis added). `A substantial investigation is just what the term implies; it does not demand that counsel discover every shred of evidence but that a reasonable inquiry into all plausible defenses be made.' Id., 466 U.S. at 686, 104 S.Ct. at 2063.
 "`The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.'
"Id., 466 U.S. at 691, 104 S.Ct. at 2066."
Jones v. State, 753 So.2d at 1191.
On appeal, Dobyne argues that the circuit court erred in rejecting his argument that counsel was ineffective for not presenting the following mitigating evidence at trial.
 1. Evidence that Dobyne suffered from blackouts and that he was physically abused when he was an infant.
Dobyne claims that his trial counsel was ineffective for failing to present the testimony of his aunt, Lois Shearer-Thompson. In a deposition, Thompson testified that she had lived with Dobyne until he was approximately two years old. She then moved to Ohio and visited Alabama only briefly the following year. Thompson's contact with Dobyne during his childhood was limited. According to Thompson, Dobyne experienced regular blackouts and episodes when he stopped breathing for up to two minutes. When he would stop breathing, Dobyne's mother would pick him up and shake him. Additionally, she testified, Dobyne's parents "beat" him several times a week. As Dobyne grew up, he witnessed his father regularly beat his mother. Thompson further testified that she had been raped while she stayed in Dobyne's home and that on at least one occasion she was raped while she was sleeping in the same bed as Dobyne.
The record on direct appeal indicates that Dobyne's trial counsel conducted an investigation and located Dobyne's mother. After evaluating Dobyne's mother as a witness by watching a videotaped interview of her, trial counsel made a strategic decision not to call her as a witness. Trial counsel, however, did call other relatives of Dobyne who had the ability to communicate and *Page 755 
who had had recent contact with Dobyne. Dobyne's grandfather testified about Dobyne's blackouts, his mother's alcohol abuse while she was pregnant with him, and her abandonment of Dobyne. Mary Cash, Dobyne's aunt, testified about his mother's drinking during her pregnancy. Thus, the record supports a finding that counsel conducted a substantial investigation. Indeed, two members of the jury voted to sentence Dobyne to life imprisonment. Because the record supports a finding that trial counsel made a reasonable inquiry in an effort to produce evidence of mitigation and that he introduced evidence of mitigation, trial counsel simply cannot be held to be ineffective for failing to uncover a witness who had very limited contact with Dobyne.
Additionally, we agree with the circuit court that although Thompson testified that she would have testified at Dobyne's trial had she been called as a witness, the credibility of this representation is drawn into question by the fact that she had not visited Alabama for over 23 years and that she did not know about Dobyne's capital-murder conviction until 1994, two years after the trial. Furthermore, we conclude that even if Thompson had testified at trial, much of the testimony would have been cumulative and it would not have affected Dobyne's sentence.
 2. Evidence of Dobyne's cognitive limitations.
Dobyne contends that his trial counsel did not present adequate evidence of his intellectual limitations and social deficiencies. During the penalty phase of trial, Dobyne presented evidence of his diminished mental capacity through the testimony of Dr. Lyman. Dr. Lyman testified that Dobyne had tested in the borderline mentally retarded range, with the mental capability of a 12- or 13-year-old. He further testified that Dobyne suffered brain impairment in the areas of fine motor coordination, rhythm perception, speech, writing, reading, memory, and intellectual processes. Relatives and two of Dobyne's special education teachers also testified to his low intelligence.
Dobyne offers only cumulative evidence of the mitigation evidence presented at trial. Therefore, Dobyne has failed to establish that his trial counsel's allegedly deficient performance affected the outcome of his trial. Strickland, supra.
 J.
Dobyne contends that his trial counsel failed to investigate, uncover, and present evidence in support of the mitigating circumstance that Dobyne had acted under the substantial domination of his codefendant at the time of the crime. (Claim Z.s. in Dobyne's first amended petition at C.R. 365.)
We have reviewed the evidence presented through the depositions of Sheila Lilly, one of Dobyne's special education teachers; Dr. Robert Lyman, a clinical psychologist; and Dr. Joe Dixon, a clinical psychologist. In support of his claim, Dobyne relies on Dr. Lyman's opinion that he was vulnerable to domination by someone brighter than he. It is significant that Dr. Lyman refrained from testifying that Dobyne was under the substantial domination of his codefendant. Dr. Lyman's opinion is cumulative of the evidence presented at trial. As Dobyne acknowledges in his first amended petition:
 "Yet evidence was presented at both phases of the trial that Mr. Dobyne was easily led or manipulated. Mr. Dobyne's step-brother testified that throughout Mr. Dobyne's life, other people had had an easy time persuading him to do things. . . . Further, Mr. Dobyne's special education teacher testified that Mr. Dobyne was `easily influenced' *Page 756 
and that he was `more of a follower than a leader.' . . .
 "Further, there was substantial evidence that Mr. Dobyne's co-defendant, Cleophus Dukes, was the prime mover behind the robbery and killings of Linda Snipes and Leon Billingsley. . . . Indeed, the idea for the crime came from Cleophus Dukes. Dukes drove himself and petitioner to the scene of the offense (where Dukes had formerly been employed) in his own car, and was the one who obtained and later disposed of the guns used in the shootings."
(C.R. 358.) Clearly, evidence was before the jury and the trial court to consider the mitigating circumstance that perhaps Dobyne was under the domination of his codefendant at the time of the crime. Therefore, Dobyne has failed to establish that his trial counsel was ineffective for failing to uncover and to present additional evidence that he was under the domination of his co-defendant. See Payne v. State, 791 So.2d 383,394 (Ala.Cr.App. 2000).
 K.
Dobyne contends that his trial counsel failed to investigate, uncover, and present evidence in support of his motion seeking funds to hire a neurologist to investigate possible present mitigating evidence. (Claim Z.t. in Dobyne's first amended petition at C.R. 365.)
Initially, we note that the Supreme Court, in addressing whether the trial court erred in not granting Dobyne funds to hire a neurologist, stated:
 "Dobyne was evaluated by the lunacy commission at the Taylor Hardin Secure Medical Facility in Tuscaloosa, Alabama. The evaluation was conducted to determine Dobyne's competency to stand trial and to determine his mental state at the time of the crime. Dr. Kathy A. Rogers conducted the evaluation on October 18, 1991, and found that Dobyne was competent to stand trial. In her evaluation, she stated that she found no evidence of any type of major psychiatric disorder. Dr. Rogers noted Dobyne's history of drug and alcohol abuse, noted his history of hallucinations while smoking crack cocaine, noted that his intellectual functioning was probably within the borderline range to perhaps the upper portion of the mild-mentally-retarded range, and noted that Dobyne had received a head injury at age five. Dr. Rogers also noted that she found no evidence of any type of gross neurological damage.
 "On January 24, 1992, Dobyne filed a motion for funds to hire a `mitigation investigator' to conduct a full investigation into Dobyne's background. In his motion, Dobyne stated that his mother had left him at a young age, that his mother and father had abused alcohol during his formative years, that his mother was a heroin addict, that he had a long history of substance abuse, and that, from the age of 17, he had had a history of attacks during which he was unable to breath and during which he experienced chest pains. The trial court granted this motion on February 21, 1992, and Neil Hartley, mitigation coordinator with the Alabama Prison Project, was retained to conduct investigative work.
 "On March 23, 1992, Dobyne filed a motion for funds to hire a psychologist. Dobyne attached to this motion a letter from Dr. Robert D. Lyman, a clinical psychologist. Dr. Lyman stated that Dobyne's history of fetal alcohol syndrome, head injury, low IQ, tremors, and seizure disorders indicated a need for comprehensive neurological and neuropsychological
evaluations. Dr. Lyman intended to conduct the neuropsychological evaluation; he made recommendations *Page 757 
for neurologists that might be willing to conduct a neurological examination. In his motion Dobyne requested only funds to hire a psychologist. This motion was granted, and Dr. Lyman conducted a neuropsychological evaluation.
 "On April 16, 1992, Dobyne filed a motion for funds to hire a neurologist. In support of his motion, Dobyne again cited his history of head injury, low IQ, seizures, and drug and alcohol abuse. Dobyne attached to this motion a letter from Dr. Lyman, in which Dr. Lyman stated that he felt that both
neurological and neuropsychological evaluations were needed. Dr. Lyman conducted the neuropsychological evaluation and explained that such an evaluation involves the assessment of such functional abilities as memory, problem solving, and language, through the use of standardized psychometric tests. Neuropsychological evaluation results are able to describe the functional deficits related to neurological conditions. Dr. Lyman explained that testing in a neurological examination includes such procedures as an EEG, an MRI, and a CT scan, and that that testing would assess and localize anatomical and physiological details of any neurological dysfunction. The trial court, on April 17, 1992, denied the motion for funds to hire a neurologist.
 ". . . [A] a defendant seeking expert assistance must show a reasonable probability that the expert would aid in the defense and that the denial of an expert to assist at trial would result in a fundamentally unfair trial. Dobyne failed to make such a showing. . . . Here, Dobyne requested funds to hire a neurologist to present evidence of mitigating circumstances at the penalty phase of the trial. While we agree that there can be a need for expert assistance at the penalty phase of a capital trial, Dobyne has not shown that the denial of funds to hire a neurologist resulted in unfairness to him. Dobyne was granted funds to hire a psychologist, and that psychologist conducted a neuropsychological evaluation. Dr. Lyman's evaluation described Dobyne's functional deficits that were related to neurological conditions. A neurological evaluation would determine whether Dobyne had actual brain damage. However, Dr. Lyman testified that Dobyne evidenced characteristics of a person with such a neurological condition. A neurological evaluation would merely be redundant of such testimony and would add nothing significant."
672 So.2d at 1358-59 (emphasis added).
In support of this claim, Dobyne presented the testimony of Thompson, who stated that, as a child, Dobyne had experienced blackouts and periods of not breathing. Additionally, Dr. Dixon testified that because of these alleged blackouts, Dobyne may have suffered from anoxia, which affects cognitive functioning, memory, thinking, problem-solving, judgment, and insight. As the Supreme Court's opinion indicates, the trial court was aware that Dobyne had suffered blackouts and suffered impaired cognitive functioning. Dobyne offers no new evidence to support a "reasonable probability that the expert would aid in the defense." Dobyne argues only that he was "entitled" to the services of an expert. Indeed, Dobyne has failed to show that the Supreme Court's statement that "a neurological evaluation would merely be redundant of such testimony and would add nothing significant" was incorrect. 672 So.2d at 1359. Because Dobyne has failed to establish that this claim is meritorious, he has also failed to establish that "but for" counsel's failure to conduct further investigation and to present additional evidence the outcome of the *Page 758 
proceeding would have been different. See Dill v. State, supra.
After reviewing the overwhelming evidence against Dobyne, including his confession, we believe that while his trial counsel may have made certain strategic choices that Dobyne now challenges, counsel's assistance was not ineffective. An accused is entitled "`not [to] errorless counsel, and not [to] counsel judged ineffective by hindsight, but [to] counsel reasonably likely to render and rendering reasonably effective assistance.'" Thompson v. State, 615 So.2d 129, 134 (Ala.Cr.App. 1992), cert. denied, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 418 (1993), quoting Haggard v. Alabama, 550 F.2d 1019, 1022 (5th Cir. 1977). We find no merit to any of Dobyne's allegations of ineffective assistance of counsel. Dobyne has not shown "by a preponderance of the evidence the facts necessary to entitle [him] to relief" on any issue concerning the ineffectiveness of his trial counsel. Rule 32.3, Ala.R.Crim.P.
 III.
Dobyne contends that the circuit court erred in denying his claim that his rights to an impartial jury, due process, a fair trial, and a reliable determination of punishment were violated because, he says, the jury foreperson engaged in misconduct. Specifically, he argues that the jury foreperson did not disclose during voir dire that she knew him personally. (Claim Y. in Dobyne's first amended petition at C.R. 360-61.)
"Before a claim of juror misconduct may be addressed on the merits in a postconviction petition the petitioner must meet the requirements for newly discovered evidence contained in Rule 32.1(e), Ala.R.Crim.P." Brownv. State, [Ms. CR-98-0343, Oct. 1, 1999] ___ So.2d ___ (Ala.Cr.App. 1999).
Rule 32.1(e) states that a defendant who has been convicted of a criminal offense may seek relief on the following basis:
 "(e) Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:
 "(1) The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
 "(2) The facts are not merely cumulative to other facts that were known;
 "(3) The facts do not merely amount to impeachment evidence;
 "(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
 "5) The facts establish that petitioner is innocent of the crime for which petitioner was convicted or should not have received the sentence that petitioner received."
Dobyne has not satisfied the requirements for newly discovered evidence. Specifically, Dobyne has not shown that he and his counsel were unaware at the time of his trial that "[Juror M.A.M.] knew [him], had contact with him, and had discussions with other teachers about him, his behavior, and his disability." (Dobyne's reply brief to this Court at p. 17.) The record indicates that Dobyne was aware that Juror M.A.M. was involved in the special education program in which he had participated. Owings testified, during his deposition, that he knew that Juror M.A.M. was a special education coordinator *Page 759 
and acknowledged that he had school records in his trial file bearing her signature. Thus, Dobyne was aware that [Juror M.A.M.] had had contact with him through the school system and has failed to establish that the Juror M.A.M.'s relationship with him was unknown, as required for relief under Rule 32.1(e)(1), Ala.R.Crim.P. .
Recognizing that at the time Dobyne's petition was filed the law addressing claims in postconviction petitions of juror misconduct was conflicting, we also address this claim on the merits. See Ex partePierce, [Ms. 1981270, May 26, 2000] (Ala. 2000)* (holding that a petitioner can allege a constitutional claim of juror misconduct).
To determine whether a defendant was prejudiced by a juror's failure to respond truthfully to a question during voir dire examination, the test is whether the defendant actually was prejudiced. Knight v. State,710 So.2d 511 (Ala.Cr.App. 1997). See Dawson v. State, 710 So.2d 472
(Ala. 1997). To assist in determining whether there was prejudice, the following factors are pertinent:
 "`[The] temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror's inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.'"
Tomlin, 695 So.2d 157, 170 (Ala.Cr.App. 1996), quoting Johnson v. State,536 So.2d 957, 958 (Ala.Cr.App. 1987), cert. denied, 490 U.S. 1046,109 S.Ct. 1955, 104 L.Ed.2d 424 (1989). "`Thus, the facts in each case must be considered individually and much will remain in the discretion of the trial judge.'" Tomlin, 695 So.2d at 170, quoting Parish v. State,480 So.2d 29, 30 (Ala.Cr.App. 1985).
The record on direct appeal indicates that Juror M.A.M. did not respond to the prosecutor's question, "Is there anyone who knows the defendant, Willie Dobyne. He's seated over here."
Juror M.A.M., a psychometrist and special education coordinator for Bibb County for over 24 years, served as the foreperson of Dobyne's jury. Dobyne was a special education student at the time Juror M.A.M. served in these capacities. During the evidentiary hearing, Juror M.A.M. testified that school records reflected that in 1978, 14 years before Dobyne's trial, she had administered a "five-minute" psychological examination to Dobyne. According to Juror M.A.M., she administered at least 120 of these examinations each year. Juror M.A.M. testified that as part of the examination process, Dobyne provided background information about himself and his family. Juror M.A.M. further testified that as part of her responsibility as special education coordinator she consulted with Dobyne's classroom teacher about Dobyne's performance. Although the classroom teacher developed Dobyne's individual education plan, she reviewed and signed the teacher's recommendation. Juror M.A.M. testified that with the exception of the time in 1978 when she administered an examination to Dobyne, Dobyne was not present during her consultations with Dobyne's teachers.
Juror M.A.M. further testified that school records indicated that in October 1984, she served on a committee that determined an appropriate disciplinary action for Dobyne. Juror M.A.M. testified that she did not recall the instances that gave *Page 760 
rise to Dobyne's being subjected to discipline. According to Juror M.A.M., the principal essentially requested her professional opinion based on Dobyne's behavior and on his academic performance as to the most effective means of discipline. Juror M.A.M. estimated that she made between 10 and 20 of these assessments of different students each year. Juror M.A.M. never talked with Dobyne; her opinion was formed from the information provided by the school personnel.
According to Juror M.A.M., despite her contact with Dobyne through her work as special education coordinator, at the time of the trial she did not recognize him, did not have any personal knowledge of him, and did not recall anything about her association with him through the educational system. Her testimony is substantiated by her candor during voir dire that she had read about the murders in the newspaper. Juror M.A.M. further testified that she based her decision that Dobyne was guilty in accordance with the trial court's instructions as applied to the evidence presented. While Juror M.A.M. admitted that at some point during the trial she realized that Dobyne was a special education student and that he would have come under her jurisdiction as a special education coordinator/administrator, she did not know him. She stated,
 "[Y]ou know, honestly just because he was in special ed didn't mean I knew him.
". . . .
 "I deal with children on a daily basis. At that point, the[re] were probably three or four hundred people identified. At this point there's six or seven hundred. Something would come up about a child I had a year ago and I wouldn't be able to recall it."
(R. 188.)
We are unwilling to say that Juror M.A.M. failed to respond truthfully to a question asked during voir dire examination. Her testimony at the Rule 32 hearing indicated that she had limited contact with numerous students during a school year and that, while she may have discussed a student's performance with a teacher and signed an evaluation for the student, she had extremely limited contact with the students themselves. Juror M.A.M.'s testimony clearly indicates that she had no specific recollection of Dobyne and that, although she may have recognized his name at some point during the trial, she had no further recollection of him. Therefore, we do not find that Juror M.A.M.'s failure to respond to this question constitutes intentional juror misconduct.
Moreover, Juror M.A.M. testified at the Rule 32 hearing that even though it appeared that she had had contact with Dobyne, she based her verdict on the testimony presented and on the trial court's instructions. Because no evidence was presented that Juror M.A.M.'s limited knowledge of Dobyne actually prejudiced Dobyne, we find no basis for reversal on this ground. See Jones v. State, supra.
Furthermore, we reject Dobyne's argument that he should have been allowed to present testimony from Dobyne's special education teachers that they had discussed Dobyne with Juror M.A.M. The inquiry before the circuit court focused on Juror M.A.M.'s personal knowledge of Dobyne and her recollection of Dobyne. Therefore, the testimony of the other witnesses would not be relevant to this issue.
 IV.
Additionally, we note that numerous claims in Dobyne's petition were precluded by the procedural bars of Rule *Page 761 
32.2(a). This court has recognized that "[t]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed." State v. Tarver, 629 So.2d at 19. See Horsleyv. State, 675 So.2d 908 (Ala.Cr.App. 1996); Grayson v. State, 675 So.2d 516
(Ala.Cr.App. 1995), cert. denied, 519 U.S. 934, 117 S.Ct. 309,136 L.Ed.2d 225 (1996); Brownlee, supra.
We find that the following claims in Dobyne's petition are procedurally barred under Rules 32.2(a)(3) and (5), Ala.R.Crim.P., because they could have been raised at trial and on direct appeal, but were not:
 1. Dobyne's claim that the trial court failed to conduct an adequate voir dire. (Claim F. in Dobyne's first amended petition at C.R. 337.)
 2. Dobyne's claim that the indictment "was fatally defective because, in alleging that the victims had been killed in the course of a `theft,' it neglected to charge that [he] had a specific intent to deprive them of their property, an essential element of the offense." (Part b. of Claim I. in Dobyne's first amended petition at C.R. 339.)
 3. Dobyne's claim that the trial court erred in failing to instruct the jury on the lesser-included offenses of murder and manslaughter. (Claim S. in Dobyne's first amended petition at C.R. 353.)
 4. Dobyne's claim that the jury foreperson committed misconduct. (Claim Y. in Dobyne's first amended petition at C.R. 360.)
We find that the following claim in Dobyne's petition is procedurally barred under Rule 32.2(a)(5), Ala.R.Crim.P., because it could have been raised and addressed on direct appeal, but was not:
 1. Dobyne's claim that the trial court erred in not considering and finding that he was under the substantial domination or control of another at the time of the crime. (Claim W. in Dobyne's first amended petition at C.R. 358-59.)
We find that the following claims in Dobyne's petition are procedurally barred under Rules 32.2(a)(2) and (4), Ala.R.Crim.P., because they were raised and addressed at trial and on direct appeal:
 1. Dobyne's claim that he was denied his rights to a jury drawn from a fair cross-section of the community and equal protection of the laws, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, by the removal of all disabled jurors from the venire from which his petit jury was drawn. (Claim A. in Dobyne's first amended petition at C.R. 330.) See 672 So.2d at 1328.
 2. Dobyne's claim that the prosecutor improperly commented on his failure to testify. (Claim D. in Dobyne's first amended petition at C.R. 334.) See 672 So.2d at 1348-49.
 3. Dobyne's claim that the trial court erred in not ordering the disclosure of the grand jury testimony. (Claim J. in Dobyne's first amended petition at C.R. 340.) See 672 So.2d at 1333.
 4. Dobyne's claim that the trial court erred in refusing to grant his motion for a change of venue. (Claim K. in Dobyne's first amended petition at C.R. 340.) See 672 So.2d at 1330.
 5. Dobyne's claim that it was error to conduct a hearing on his motion to quash the jury venire without him present. (Claim L. in Dobyne's first amended petition at C.R. 341.) See 672 So.2d at 1329-30.
 6. Dobyne's claim that the trial court erred in admitting his statement to law-enforcement officers into evidence because, he said, he had involuntarily waived his right to remain silent and his *Page 762 
right to counsel. (Claim M. in Dobyne's first amended petition at C.R. 342.) See 672 So.2d at 1336-37.
 7. Dobyne's claim that the trial court was required to provide funds to hire a neurologist. (Claim X. in Dobyne's first amended petition at C.R. 359.) See 672 So.2d at 1345-47 and 1357-59.
We find that the following claims in Dobyne's petition are procedurally barred under Rules 32.2(a)(3) and (4), Ala.R.Crim.P., because they could have been raised and addressed at trial, but were not, and were raised and addressed on direct appeal:
 1. Dobyne's claim that the trial court erred in not conducting a competency hearing. (Claim C. in Dobyne's first amended petition at C.R. 333.) See 672 So.2d at 1326.
 2. Dobyne's claim that his equal protection rights were violated because, he said, African-Americans have been systematically excluded from the position of grand jury foreperson in Bibb County. (Claim E. in Dobyne's first amended petition at C.R. 336.) See 672 So.2d at 1326-27.
 3. Dobyne's claim that the indictment was fatally defective because, he said, it combined two offenses into a single count. (Claim H. in Dobyne's first amended petition at C.R. 338.) See 672 So.2d at 1325-26.
 4. Dobyne's claim that the indictment was fatally defective because, he said, it did not properly charge capital murder-robbery. (Claim I. in Dobyne's first amended petition at C.R. 339.) See 672 So.2d at 1326.
 5. Dobyne's claim that the trial court erred in not instructing the jury that it could convict defendant of the capital murder of Leon Billingsley while acquitting him of the capital murder of Linda Snipes. (Claim N. in Dobyne's first amended petition at C.R. 346.) See 672 So.2d at 1341.
 6. Dobyne's claim that the trial court issued an improper instruction inviting the jury to find him guilty of the capital murder of Linda Snipes, regardless of whether he intended to cause her death. (Claim O. in Dobyne's first amended petition at C.R. 348.) See 672 So.2d at 1344-45.
 7. Dobyne's claim that the trial court issued an improper reasonable-doubt instruction. (Claim P. in Dobyne's first amended petition at C.R. 349.) See 672 So.2d at 1342-44.
 8. Dobyne's claim that the trial court issued an improper instruction on witness credibility. (Claim Q. in Dobyne's first amended petition at C.R. 350.) See 672 So.2d at 1344-45.
 9. Dobyne's claim that the trial court erred in not instructing the jury that if it determined that his confession was not voluntary, then it could not rely on the confession. (Claim R. in Dobyne's first amended petition at C.R. 351.) See 672 So.2d at 1345.
 10. Dobyne's claim that the trial court erred in not instructing the jury on the lesser-included offense of felony-murder. (Claim S. in Dobyne's first amended petition at C.R. 352.) See 672 So.2d at 1345.
We find that the following claims in Dobyne's petition are procedurally barred under Rule 32.2(a)(4), Ala.Cr.App., because they were raised or addressed on appeal.
 1. Dobyne's claim that he was denied access to mitigating evidence to present to the jury because the prosecution failed to disclose that it had a deal with the codefendant. (Claim B. in Dobyne's first amended petition at C.R. 331.) See 672 So.2d at 1347. *Page 763 
 2. Dobyne's claim that the trial court erred in not considering and finding the statutory mitigating circumstance that his ability to appreciate or control his actions at the time of the offense was substantially impaired. (Claim T. in Dobyne's first amended petition at C.R. 353.) See 672 So.2d at 1351.
 3. Dobyne's claim that the trial court erred in relying on a report compiled by the examining doctor at Taylor Hardin Secure Medical Facility that was not admitted into evidence in determining his sentence. (Claim U. in Dobyne's first amended petition at C.R. 355.) See 672 So.2d at 1351-52.
 4. Dobyne's claim that the trial court erred in relying on uncounseled and unwarned statements contained in the report from Taylor Hardin in determining his sentence. (Claim V. in Dobyne's first amended petition at C.R. 356.) See 672 So.2d at 1352.
 5. Dobyne's claim that the trial court erred in excusing a prospective juror from service because she stated that she had been arrested in another county several months earlier. (Claim F. in Dobyne's petition at C.R. 71.) See 672 So.2d at 1330-31.[5]
On direct appeal, this Court and the Alabama Supreme Court searched the entire transcript for error, pursuant to Rule 45A, and Rule 39(k), Ala.R.App.P., as Rule 39(k) read before its recent amendment. If this Court had found anything that would merit reversal, even if it had not been raised on appeal, we would have reversed the judgment and remanded this case for a new trial.
Based on our review of the record presented on appeal from the circuit court's denial of Dobyne's Rule 32 petition, we conclude that the circuit court properly denied Dobyne's petition.
AFFIRMED.
Long, P.J., and McMillan, Cobb, and Baschab, JJ., concur.
* Note from the reporter of decisions: The Supreme Court, on September 1, 2000, on application for rehearing, withdrew the EX parte Pierce opinion of May 26, 2000, and substitued a new opinion.
[1] For a more detailed recitation of the facts, see Dobyne v.State, 672 So.2d at 1324.
[2] We note that on appeal from the denial of his Rule 32 petition, Dobyne argues that this Court on direct appeal held that trial counsel did not adequately investigate and present evidence at the pretrial hearing to establish his ineffective assistance of counsel claim. Dobyne's argument, however, ignores the fact that this Court is bound by the holding of the Alabama Supreme Court, which states:
 "[S]election of a petit jury from a representative cross-section of the community is essential to a fair and impartial jury trial. Without reaching the question whether the physically disabled constitute a `distinctive group,' we think it clear that there was no violation of the fair-cross-section requirement in this instance, because physically disabled persons were selected at random from a fair-cross-section of Bibb County and were called for jury service. They were members of the jury pool from which Dobyne's venire and all other Bibb County jury venires were drawn. There was evidence presented that there was no systematic exclusion of physically disabled jurors; rather, the evidence revealed only that those physically disabled jurors excluded had themselves requested to be excluded from jury service. Under these circumstances, we conclude that Dobyne has failed to establish that the jury pool did not represent a fair cross-section of the community from which his jury was drawn. Therefore, Dobyne's argument on this issue is without merit."
672 So.2d at 1357. This holding indicates that even if counsel had presented additional evidence, Dobyne would not have been able to establish that the jury pool did not represent a fair cross-section of the community. Thus, Dobyne's counsel's performance did not affect his trial in this regard.
[3] In his brief to this Court, Dobyne vigorously argues that the duties of a Bibb County grand jury foreperson are not ministerial. This contention is simply not supported by the record. The testimony of the circuit clerk directly refutes this argument. (C.R. 1014-46.) See alsoPace v. State, 714 So.2d 332, 336 (Ala. 1997) ("In this state, the function of a grand jury foreperson is almost entirely ministerial in nature."); Ex parte Myers, 699 So.2d 1285 (Ala. 1997); and Noah v.State, 494 So.2d 870 (Ala.Cr.App. 1986).
[4] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986).
[5] We note that this claim was omitted from Dobyne's first amended petition. We are unable to determine whether the omission was intentional; therefore, out of an abundance of caution, we include this claim.